Woodard *v.* Bird.

WOODARD *v.* BIRD.

(*Knoxville.* October 13, 1900.)

1. GUARDIAN AND WARD. *Guardian's authority to loan and invest ward's funds.*

A guardian's authority to loan and invest his ward's funds is purely statutory. The statute on this subject provides that "where the profits of a ward's estate shall be more than sufficient to educate and maintain him, the guardian shall lend the surplus, and all other sums of money in his hands, upon good and sufficient sureties, or by mortgage on real estate—the amount, however, not to exceed one-half the value of the real estate mortgaged, to be approved by the Court at its next session, and to be repaid with interest—or he may invest the same in State bonds." (*Post, pp. 681. 682.*)

Code construed: § 4280 (S.); § 3384 (M. & V.), § 2513 (T. & S.).

2. SAME. *Unauthorized investment of ward's funds, and ward's remedy.*

The transaction is wholly unauthorized and voidable at the election of the ward, who may recover back his funds invested therein from both his guardian and the other party thereto, having knowledge of the illegal use of the trust fund, where a guardian buys, with his ward's funds, a note secured by mortgage, taking indorsement of same, without recourse, to himself as guardian, and then proceeds, without submitting same to County Court for approval, to pay part of the purchase price, leaving the note in pledge for a large balance, and agreeing that, upon foreclosure of the mortgage, this balance should be first paid out of the proceeds. (*Post, pp. 682–687, 691, 692.*)

3. SAME. *Same.*

And, in such case, the ward is entitled, as against the seller of the note, who participated in the illegal transaction, and as against his assignee of the balance due on the note, who did

not participate in the illegal transaction, but took a mere equity, inferior to that of the ward, to have the fund realized from foreclosure of the mortgage first applied to the repayment of his funds illegally diverted into the purchase of the note. (*Post, pp. 682–687, 691, 692.*)

Cases cited: Gordon *v.* English, 3 Lea, 634; Williams *v.* Love, 2 Head, 79.

4. SAME.  *Same.*

And it constitutes no defense, in such case, to the innocent ward's action to recover back his funds illegally paid on the purchase of such note, that the guilty seller of the note had made the transaction as executor of an estate, and had distributed the fund received and made settlement of the estate before the bringing of the ward's action. (*Post, pp. 684–686.*)

Cases cited: McAlister *v.* Montgomery, 3 Hay., 93; Sneed *v.* Hooper, Cooke, 200; Parker *v.* Gilliam, 10 Yer., 395; Smart *v.* Waterhouse, 6 Hum., 158.

5. CROSS BILL.  *Unnecessary, when.*

A cross bill is unnecessary, and the refusal of permission to file it proper, where its averments, so far as they are cognate to the case made by the original bill, are mere repetitions of the averments of the answer under which full relief could be had. (*Post, p. 687.*)

6. CHANCERY SALE.  *Purchaser's rights.*

The purchaser of land under decree of foreclosure acquires no title where the case in which the sale is made is reversed in its material aspects, upon a broad and general appeal taken from the final and all other decrees granted at the same term that the sale was confirmed. (*Post, pp. 688–690.*)

Code construed: § 4922 (S.); § 3906 (M. & V.); § 3186 (T. & S.).

Cases cited: Winchester *v.* Winchester, 1 Head, 460; Lewis *v.* Baker, 1 Head, 386; McGavock *v.* Bell, 3 Cold., 513; Livingston *v.* Noe, 1 Lea, 55; Furber *v.* Carter, 2 Sneed, 1; Dossett *v.* Miller, 3 Sneed, 73; Pond *v.* Trigg, 5 Heis., 536; Childress *v.* Hurt, 2 Swan, 486.

7. SUPREME COURT.  *Cannot look to the facts beyond report of Court of Chancery Appeals, when.*

Upon review of a cause appealed from the Court of Chancery Ap-

peals, this Court cannot look behind the report and opinion of that Court for the facts of the case. (*Post, p. 692.*)

FROM HAMILTON.

Appeal from Chancery Court of Hamilton County. T. M. McConnell, Ch.

Robt. P. Woodard and Pritchard & Sizer for Woodard.

R. L. Bright for Bird.

M. H. Clift for Doescher, cross complainant.

Frazier & Coleman for Mrs. Wisdom.

Cooke, Swaney & Cooke, for Hampton.

Beard, J. The original bill in this cause was filed, asking for the foreclosure of a trust deed made by S. H. and Gus Bird to J. B. Frazier, trustee, in December, 1888, conveying a valuable tract to secure Lewis Shepherd in the payment of a note for $10,666.55, executed by the Birds and due twelve months after date. It is alleged in the bill that before its maturity, and for a valuable consideration, the payee of this note had assigned it to A. J. Wisdom, executor of the estate of Lewis Owen and Julia Owen, deceased, and

21 P—43

that subsequently he negotiated a sale of it to Catherine Doescher, guardian of her minor wards, Arthur, Isabel and Harry Doescher, for the purchase price of $11,619.42, of which amount she paid at the time the sum of $5,000, and agreed to pay the balance in the future. To secure this balance, instead of delivering the note to the then purchaser, an agreement was entered into by which it was placed in the hands of one Wiehl, who was to hold the same for the security of the transferer. This agreement is embodied in the instrument of writing executed by Wisdom at the time, and which, after formally assigning this note to Mrs. Doescher as guardian of the minors without recourse, and reciting that, after the payment by her as above stated, there remained a balance due of $6,619.42, which was to bear interest until paid, then closes with the following recitals, viz.: "Said note is to be held by F. F. Wiehl until said balance is paid to me, or until the foreclosure of the deed of trust hereinafter named. Said note is secured by a deed of trust executed on the same date of the note by S. H. and Gus Bird to J. B. Frazier, trustee. Upon the foreclosure of said deed of trust it is agreed by said Mrs. Doescher that the balance then due on said note shall be first paid out of the proceeds of said foreclosure sale before anything is paid to said Catherine Doescher. . . . (Signed) A. J. Wisdom, *Executor.*"

The bill alleged that certain payments had been subsequently made by Mrs. Doescher either to Wisdom or to Wiehl for him, which when credited to said balance reduced the claim of Wisdom on said note to about $4,000, and that Wisdom had assigned this balance to complainant as the guardian of his ward.

It is insisted by complainant that, out of the proceeds of the foreclosure sale he, for his wards, should be first paid the balance of his claim and interest, and that whatever remained should be applied as far as necessary to that of the Doeschers.

To this bill the two Birds, Frazier, trustee, Wiehl, Isabel, Harry and Arthur Doescher, and Mrs. Catherine Doescher, in her own right and as guardian, were made defendants. Arthur and Isabel and Harry Doescher filed a general answer to the bill. Isabel and Harry being minors, but over fourteen years of age, answered in person and by M. H. Clift, their guardian *ad litem*.

In their answer they admit the contract was made by their guardian with Wisdom to purchase this note, and that at the date of the contract there was paid to Wisdom $5,000, and they allege that subsequently various large sums were paid by her to Wisdom on account of the contract, all of which came from their estate in the hands of their guardian. They deny the right, however, of their guardian to enter into this contract and make

this investment, and insist that in so doing there was an abuse of her trust, in which Wisdom, her vendor, was an active participant. With their answer they file a cross bill in which, after repeating these averments of the answer, they charge that the contract made by Wisdom with their guardian was made in his own right, and not as executor; that in receiving the payments made by Mrs. Doescher on this illegal contract he had knowledge of her misappropriation, and they allege that they have a right to hold his estate (he being then dead) liable for the sums received by him, as well as for a $2,500 note belonging to their estate, put into his hands for collection, the proceeds of which were to go to the credit of the contract, and interest upon these various amounts. They ask, among other things, therefore, that the contract of purchase of this note by their guardian be declared illegal, and that they have a decree against his estate for the sums received by him in money, as well as what he should have received on the $2,500 note and interest. They also pray for general relief.

To this cross bill Mr. Wisdom, as executrix of A. J. Wisdom, and is her own right, made answer, in which she alleged that her testate made the contract of sale to, and received the purchase money in question from, Mrs. Doescher as executor, and not as an individual, and denied that his estate could be held liable, even if there had

been misappropriation of the funds of the wards as charged, inasmuch as before his death he had paid out all of the funds received by him to the legatees of the estate of his testates, and had made a full and final settlement of their estates. The answer also denied that the guardian of cross complainants was without authority in law to make the instrument in this note.

An order *pro confesso* on the original bill was taken against S. H. and Gus Bird. Subsequently an application was made and granted to set aside this order as to these defendants, upon terms imposed by the Chancellor. S. H. Bird availed himself of these terms or conditions, and filed an answer. Gus Bird did not. In the answer of S. H. Bird, it is alleged that the real estate covered by the trust deed to Frazier came to himself and his brother Gus as devisees under their father's will, and at that time was involved in litigation which was subsequently compromised by an agreement on their part to pay $2,000, which sum they borrowed from their attorney; that, beginning with this, their transactions were quite numerous, so that by December, 1885, he claimed a balance of $10,666.55, and required them to execute the note and mortgage involved in this litigation. He enters with much detail into these various transactions, and charges that in many and various respects they were taken advantage of by him, and were induced to execute the present

note, when in fact there was nothing due to him, or, if anything, only a trifling sum of money. They admit the transfer of this note by its payee to A. J. Wisdom, but they allege that he took it after maturity, or, if before, he was not a purchaser for value in due course of trade, and that it was subject in his hands and that of the present holder to all equitable defenses that existed while in the hands of the original payee.

It is further alleged that in 1891 respondent and his brother borrowed from Catherine Doescher $1,700, and gave her their joint note, secured by a trust deed on this same tract of land; that thereafter the two brothers partitioned the tract between themselves, save a small part of it, which was left in common; that after the maturity and non-payment of this note the property was advertised for sale under this last-mentioned trust deed, during which time its makers were engaged in raising money to discharge it, when, by false promises made by Catherine Doescher and the attorney who had before this represented them, but who now represented her, they were induced to forbear and submit to the foreclosure; that after this was effected this agreement was repudiated, and Mrs. Doescher, the purchaser, instituted proceedings to obtain possession, pending which she negotiated a trade with Gus Bird, by which, in consideration of his conveyance to her of the portion of the property which he held under the partition, as

well as his half interest in the undivided part of this property, she was to release him from all liability on the $1,700 note, as well as the note for $10,666.55 executed to Lewis Shepherd which she claimed to hold, and also to reconvey to himself and wife one hundred acres out of this property, all of which, it is alleged, was done. This transaction so carried out, it is averred, was by operation of law, a release of respondent personally, and of his interest in the land from the two notes and mortgages, and if not, that it was a fraudulent scheme designed by the parties to throw the burden of these debts and the mortgages on him and his land.

Subsequently S. H. Bird presented to the Chancellor a cross bill, and asked leave to file it in the cause. This was declined, but by a proper order it was preserved in the record. On examining it, we find that it is simply a restatement of the allegations of this answer.

On the final hearing of the cause it was decreed that Shepherd, the payee, transferred the note of $10,666.55 to A. J. Wisdom, as executor, before maturity, for full value, and in due course of trade, and Wisdom, as executor, afterward assigned the note to Catherine Doescher as guardian of her minor children, for value, and without any taint of fraud, either actual or constructive, in the transfer; that of the purchase money the transferee had only paid a part, and that by the terms of

this transfer the note was left in the hands of Wiehl until the balance was paid, and if not paid then for a foreclosure sale under the trust deed, out of the proceeds of which A. J. Wlsdom, executor, was entitled to priority of satisfaction, as against the Doeschers; and that by his transfer to complainant Woodard, guardian, the latter succeeded to this right of priority; that complainant was entitled to a foreclosure of the trust deed described in the original bill, and to this end the Clerk and Master was ordered to first offer for sale so much of the original tract as had not been partitioned between the Birds, next the lands partitioned, save the 100 acres conveyed by Catherine Doescher to Gus Bird and wife, and then this 100 acres, provided he has not already realized enough to satisfy the decree; and then he was to offer the whole tract for sale and report his action to the Court. The cross bill of the Doeschers' was dismissed. After a number of intermediate steps, which need not be mentioned, this decree of sale was ultimately executed by a sale of the whole tract to F. T. Hampton, at the price of $10,900, who, having paid the whole amount, asked the Court for a decree of divestiture of title out of all the parties to the suit and a vestiture in himself, which was accordingly entered. From this decree, as well as the former orders and decrees in the cause, S. H. Bird prayed and perfected his appeal, and from this decree and that dismiss-

Woodard *v.* Bird.

ing the cross bill, the Doescher children prayed and perfected an appeal.

The cause was recently heard by the Court of Chancery Appeals, and that Court having affirmed the decree of the Chancellor, it was brought before us for review of the action of that Court by all the parties to the original appeal.

This statement of the pleadings and various steps taken in this cause has been necessary in order to a proper understanding of the contentions of the appellants, and of the complaint which they make respectively of the disposition of these contentions by the decree of the Court of Chancery Appeals.

We will first dispose of the claim of the Doescher children. Their insistence is that their guardian had no right to invest their money in the purchase of the Bird note and mortgage. Is this insistence sound? By § 4280 of Shannon's Code, which corresponds with § 3354 of the Code of Milliken and Vertrees, it is provided that "where the profits of a ward's estate shall be more than sufficient to educate and maintain him, the guardian shall lend the surplus and all other sums of money in his hands upon good and sufficient sureties, or by mortgage on real estate, the amount, however, not to exceed one-half the real actual value of the real estate mortgaged, to be approved by the Court at its next session, and to be repaid with interest, or he may invest the same

in State bonds." The transaction in question must rest for its legality upon this section of the Code, for the authority of the guardian to invest his ward's funds is purely statutory. Even if it were conceded that a purchase of an existing mortgage was within the terms of the statute, yet this contract could not be saved. The statute contemplated that the guardian, in parting with the ward's money, should get the custody of and have the control of the note and mortgage representing the loan, and yet in this case, notwithstanding the payment of $5,000, Mrs. Doescher never obtained possession of the securities in question; on the other hand, it was specially agreed that she should not, as long as there was a dollar of the purchase money still due. In addition, there is no pretence that it was ever submitted to or approved by the Court having jurisdiction of this guardian, an act made essential to a legal consummation. But a moment's consideration, we think, will make it clear that this transaction was not within the legislative intent. When a guardian deals directly with the borrower, he is personally familiar with the transaction from its inception to its conclusion in the payment of the money and the acceptance of the mortgage, and is thus able to know that everything has been done for the security of the ward's estate. It is otherwise when he purchases an existing mortgage. What secret vice there is in it he cannot know.

Woodard v. Bird.

Its consideration may be of such a character as 'to make it void under the law even coming to his hands before maturity for full value and without notice of the vice inherent in it. But the contract between Wisdom and this guardian cannot be supported on any ground. If it had been submitted to a Court of Equity beforehand, it would not have been authorized, and having been entered upon without prior authority, cannot be ratified. The sale was of an overdue note, and made by Wisdom without recourse. In addition, the nature of the transaction placed the funds of the minor in imminent peril. On a purchase, to complete which required an expenditure of over $11,000, the guardian pays in cash only the sum of $5,000, and leaving the papers in the custody of a third party, agrees that in the event of a foreclosure or otherwise, the claim for the large balance due the seller shall first be satisfied, and thus places upon her ward the risk of loss from future deterioration of the property. Such a transaction cannot be maintained on any sound principles, and its illegality affects both parties. She had no power to purchase this security, and Wisdom had no right to sell it to her. He knew he was dealing with a guardian who was thus using her ward's money in making an unlawful contract. His transfer to her was not as an individual, but in her trust capacity. By its terms he admits that he was contracting with her as a trustee,

and about the investment of funds belonging to her. He was in its strictest sense a transferee with notice, and being so, under an equitable rule of universal application, "became himself a trustee for the original" beneficiaries. 2 Pomeroy's Eq., sec. 1048.

But it is said that, even if this be so, yet Wisdom in this was dealing for the estate of his testator, and having disposed of the moneys received among the legatees under the will, his estate cannot be held. This is a mistake. Having co-operated with the guardian in the abuse of her trust, he could not, if alive, nor can his executrix, since he is dead, shift the consequences of his participation upon the estate of which he was the representative. He had no power to involve these estates in this transaction, and had he attempted by express words to provide that he was dealing with the guardian as an executor, and not as an individual, he could not have secured himself against personal responsibility as a constructive trustee. For lacking the right to bind these estates, he was bound himself. This rule is applied in the case of a party who, claiming to be an agent, does an act for a principal without authority to bind the principal and is held bound personally (Ewell's Evans on Agency, *302, cases cited in note to article on Agency, 1 Am. & Eng. Enc. L., pp. 1124, 1125), and also in the

case of an administrator who executes a note in his representative capacity.

There is nothing in the record to warrant the presumption that this executor had a right to invest the funds of the estates he was controlling in the note of the Birds. But conceding to him the power and the right to purchase this note for these estates, yet when acquired he had in law the unlimited right to dispose of it in any way he saw proper (*McAlister* v. *Montgomery,* 3 Hay., 93; *Sneed* v. *Hooper,* Cooke, 200), subject alone in equity to the right of parties interested to follow it into the hands of a fraudulent vendee or mere donee. *Parker* v. *Gilliam,* 10 Yer., 395; *Smart* v. *Waterhouse,* 6 Hum., 158. This unlimited legal power of alienation he exercised by selling to Mrs. Doescher, guardian, and by the terms of the transfer vested in her the title subject alone to the equitable lien he reserved to secure the balance of the purchase money.

And it is immaterial that treating the moneys thus wrongfully received from the guardian, as assets of the estates of which he was executor, A. J. Wisdom in his lifetime distributed them among the parties interested in those estates. His good faith in so doing would not have protected him, nor will it serve as a shield for his estate. This appropriation of the trust fund is no more a defense than would have been an application of it in equal good faith to the discharge of his

personal debts. Having received it with the trust impressed upon it, he could only rid himself of liability by paying it over to the parties equitably entitled to it—that is, the Doescher children, or rather, their legal representative. There was error, therefore, in the dismissal of the cross bill of the Doescher children. On it they were entitled to a decree fixing the liability of the executrix of Wisdom, deceased, for the amount of their funds which came into his hands or into the hands of his agent, Wiehl, for him, with interest from the date or dates of the receipt of same, and also for any loss sustained by them if any, in a failure on his part to collect any security of theirs turned over to Wisdom, the proceeds of which, when collected, were to be appropriated to the credit of their guardian's purchase of the note of the Birds. They also have a superior lien on this note and the mortgage to secure it for such sum as may be found due to them, and are entitled to a decree for a foreclosure of the mortgage to reimburse the trust funds, and then over against Mrs. Wisdom, executrix of A. J. Wisdom, for any loss sustained by them on the sale. *Gordon* v. *English,* 3 Lea, 634-639; 1 Perry on Trusts, sec. 128. This sale, however, could not be decreed until the liability of the Wisdom estate had been ascertained upon a proper reference.

Nor can the complainant, Woodard, guardian,

complain of this disposition of the claim under this cross bill. Certainly A. J. Wisdom, if alive, could not. As against him, this prior lien to secure the wards of Mrs. Doescher, on this note and mortgage of the Birds, given above, rests on a sound basis in reason and authority. The complainant, Woodard, guardian, stands on no better ground. Wisdom was, after his transfer, only the owner of an equity in these securities. This was what he transferred, and all he could transfer in his settlement with complainant, and the rule is, a purchaser of an equitable title must always abide by the case of the person from whom he buys. *Williams* v. *Love, Ex.,* 2 Head, 79.

As to the errors assigned by S. H. Bird:

1. We think the Chancellor properly refused him permission to file his cross bill. It was not necessary. As far as it is cognate to the case made by the original bill, it was but a repetition of averments of the answer, under which he could obtain all the relief to which he was entitled.

2. There was no error in the holding of the Chancellor that the transaction between Catherine Doescher and Gus Bird, whatever its nature, could not and did not affect the note and mortgage made by the Birds to Shepherd.

3. There was error in the order of sale as prescribed by the Chancellor. This, however, is now immaterial, inasmuch as we have already held that no decree for sale should have been entered

until the liability of the Wisdom estate to the Doescher children was ascertained.

The decree of the Court of Chancery Appeals affirming the decree of the Chancellor dismissing the cross bill of the Doescher children, including Mr. and Mrs. Rhinehart, and the decree for the sale of the real estate, as well as the final decree divesting title out of the original parties interested in it and vesting in the purchaser, Hampton, are therefore reversed.

In behalf of the purchaser, Hampton, however, it is insisted that the title acquired by him ought not to be affected by this reversal, because as a stranger to the cause he bought in good faith at the Master's sale, made under a decree pronounced by a Court having jurisdiction of the subject-matter and the parties. This insistence we do not think sound, nor is it sustained by the Tennessee cases relied upon for authority. The case of *Winchester* v. *Winchester,* 1 Head, 460, was one where a bill of review was filed to impeach a decree of near thirty years' standing under which many sales had been made, on the two grounds, of error apparent on the face of the record and of newly discovered evidence. The Court there announced the elementary rule "that whenever a Court of Chancery or other Court of general jurisdiction possesses jurisdiction of the subject-matter of litigation and has acquired jurisdiction of the parties, as to third parties, interested under its

judgments and decrees, its proceedings cannot be held to be void after a final disposition of the cause." In *Lewis* v. *Baker, Id.,* 386, it was held that, under sec. 16, Chapter 20, of the Act of 1835, Code (Shannon) § 4922, where a decree had been executed by a sale of property, either real or personal before a writ of error is obtained and supersedeas granted, the title of the purchaser under the decree is not affected by the reversal of the same upon a writ of error. *McGavock* v. *Bell,* 3 Cold., 513, and *Livingston* v. *Noe,* 1 Lea, 55, were both bills to impeach former decrees and the titles of purchasers thereunder, and in each case the rule as announced in *Winchester* v. *Winchester, supra,* was applied.

The case at bar is not within the authority of those cases. It is one of purely equitable jurisdiction, from the various decrees in which broad appeals were prayed by the parties, whose assigned errors went to the life of those decrees. The result is, that those decrees were annulled or vacated, and the cause was brought to this Court for trial *de novo.* *Furber* v. *Carter,* 2 Sneed, 1; *Dossett* v. *Miller,* 3 Sneed, 73; *Pond* v. *Trigg,* 5 Heis., 536. In addition, it is well settled that the purchaser of real estate at a Master's sale in such a cause obtains no interest in it by his bid; this stands as a mere offer until the report of the sale is confirmed by the Chancellor. *Childress* v. *Hurt,* 2 Swan, 486. And it happens

21 P—44

that in the present case the decree of confirmation amounting to an acceptance of Hampton's bid contains the prayer for and the Chancellor's grant of an appeal to these complaining parties. So that in the sense of the rule hereinbefore quoted, there was no final disposition of the cause, as to the purchaser, at the time the appeal was granted. The appeal devitalized the decree of acceptance, and left the rights of all parties to be determined as if no sale had been made, and if made, as if the report of it was not confirmed.

Whatever may be the rule in other Courts, as laid down in 2 Freeman on Judgments, sec. 454, that in our Courts is the one already indicated.

The cause is remanded to the Chancery Court for proceedings in accordance with this opinion. The costs of the appeal will be paid by P. P. Wisdom, executrix of A. J. Wisdom, deceased; the costs below will await the final determination of the case.

### ON PETITION TO REHEAR.

BEARD, J. We are asked by complainant to modify the decree heretofore entered so as either "to award execution against the estate of A. J. Wisdom, deceased, for the amount paid to him by Mrs. Doescher on account of the attempted purchase by her of the Bird note, after crediting thereon so much of the proceeds of the sale of the property as may remain after payment of the balance due

Woodard *v.* Bird.

petitioner's wards, or else to adjudge, in the event the proceeds of the foreclosure sale are insufficient to pay in full the amount due on the Bird note, that then petitioner's wards and the wards of Mrs. Doescher are entitled to share in such proceeds in proportion to their respective interest in said note."

The necessary effect of the modification thus sought is to place the risk of the solvency of the estate of A. J. Wisdom, in whole in the first instance, and in part, in the second, upon the Doescher children, who are entirely innocent in this matter of breach of trust of which they complain and against which relief is granted them by our decree. We think this should not be done. In addition, in the matter of working out their equities as prescribed in the decree, we but adhered to a rule adopted by this Court in *Gordon* v. *English, supra,* and sustained by the authorities cited in support of the opinion in the case. We can see nothing in the record to warrant us in departing from this rule.

It is insisted in the petition that the equities of the Doeschers and of petitioner's wards are equal. We do not think so. Those of the Doeschers are certainly prior in point of time. They are also superior in right. For taking, as did their guardian, an assignment of an equity, he took it subject to all antecedent equities. In other words, he (and in this he and his wards are

Woodard *v.* Bird.

identical) stands in the place of his assignee, and must abide his title. *Williams* v. *Love, supra.*

We are invited to go back into the depositions in this case, to ascertain what is assumed in the petition to be Wisdom's true connection with the Bird note. Even if this could result in changing our view in this matter, yet we cannot do it. We are confined for the facts to the opinion of the Court of Chancery Appeals; upon that alone are we at liberty to rest. Re-examining, as we have done, the record so far as we are permitted to do, as well as the opinion heretofore delivered, we cannot discover any warrant for changing the conclusions therein announced. The petition is therefore dismissed.