HUMPHRIES *v.* MANHATTAN SAV. BANK & TRUST CO. *et al.*

(*Nashville,* December Term, 1938.)

Opinion filed Dec. 17, 1938.

HAM PATTERSON, S. M. NEELY, and JOHN W. GIBSON, all of Memphis, for complainant.

CANADA & RUSSELL and COOPER TURNER, JR., all of Memphis, for defendants.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This bill was brought by Martha Pearl Humphries, a minor, through her next friend, to recover of Manhattan Savings Bank & Trust Company and Manhattan Securities Company the sum of $3655.34, with certain interest. The bill was dismissed by the chancellor but his decree was reversed by the Court of Appeals and a decree was rendered for the minor in that court.

Mrs. Pearl Humphries was the guardian of her daughter, this minor. Mrs. Humphries had in her hands the sum of $3655.34 belonging to the minor, which she had on deposit at the Manhattan Savings Bank & Trust Company. She advised with one of the vice presidents of that institution about a proper investment for this fund of her ward. He recommended that she purchase $3600 of a series of $4500 of notes or bonds, secured by a mortgage on certain real estate. These securities were in the hands of Manhattan Securities Company, which appears to have been a subsidiary of Manhattan Savings Bank &

Trust Company organized to handle particular business of the last mentioned concern. Pursuant to this advice, Mrs. Humphries bought $3655.34 worth of these notes or bonds, paying for them with her check, drawn as guardian, upon Manhattan Savings Bank & Trust Company in favor of Manhattan Securities Company.

Prior to the closing up of this transaction Mrs. Humphries and a representative of Manhattan Savings Bank & Trust Company or of Manhattan Securities Company went before the Judge of the Probate Court of Shelby County and procured an order from him approving this investment by the guardian of her ward's funds.

■■ Leaving out of consideration the order of the Probate Court, the purchase of this note by the guardian was an unlawful diversion of her ward's money. "A guardian's authority to lend and invest his ward's funds is purely statutory. While the guardian is authorized to lend his word's surplus funds upon real estate, under conditions outlined in the statute, Code, section 8496 [Shannon's Code, sec. 4280], he is not authorized to purchase an existing mortgage. One who sells such a mortgage to a guardian participates in an illegal transaction. *Woodard* v. *Bird,* 105 Tenn., 671, 59 S. W., 143." *Freeman* v. *Citizens' National Bank,* 167 Tenn., 399, 70 S. W. (2d), 25, 29.

■ Manhattan Savings Bank & Trust Company and Manhattan Securities Company were both fully advised that the money used to purchase the securities herein involved was a guardianship fund, that it was drawn out of bank by a guardian's check, and that the guardian acquired the securities for her ward. Under such circumstances, both these defendants were parties to the unlawful diversion of a trust fund and apparently re-

cipients of a trust fund unlawfully diverted. Each of defendants, therefore, became liable to the *cestui que trust*. *Freeman* v. *Citizens' National Bank, supra; Woodard v. Bird, supra.*

In the briefs supporting the petition for *certiorari* the quoted ruling of the two cases just cited is assailed and it is urged that such a ruling was not necessary to the decision in either case. However, *Woodard* v. *Bird* was decided nearly forty years ago and has since been regarded as authoritatively settling the proposition that a guardian was not authorized to purchase an existing mortgage with his ward's funds. This was so until the enactment of chapter 100 of the Public Acts of 1931. In *Woodard* v. *Bird* the court said [page 682]:

"Where a guardian deals directly with the borrower, he is personally familiar with the transaction from its inception to its conclusion, in the payment of the money and the acceptance of the mortgage, and is thus able to know that everything has been done for the security of the ward's estate. It is otherwise when he purchases an existing mortgage. What secret vice there is in it, he cannot know. Its consideration may be of such a character as to make it void under the law, even coming to his hands before maturity, for full value, and without notice of the vice inherent in it."

Upon the foregoing authorities it seems clear that the suit of this ward against the defendants named is well founded unless defendants are protected by the order of the Probate Court of Shelby County.

■ It is first urged that this Probate Court is a court of general jurisdiction and that its judgments and decrees are not subject to collateral attack. For this *Magevney* v. *Karsch,* 167 Tenn., 32, 65 S. W. (2d), 562, 92

A. L. R., 343, and other cases are cited. It is true that the Probate Court of Shelby County is one of general jurisdiction as to matters and things committed to such court. Nevertheless, the jurisdiction of this court is purely statutory and we must look to the statutes creating it to determine whether it had any authority to authorize a guardian to depart from statutory requirements as to the investment of his ward's funds.

 The Probate Court of Shelby County was created by chapter 86 of the Acts of 1870. The relevant section of that Act is section 2, as follows:

"Sec. 2. Be it further enacted, That the said Court shall have original jurisdiction of all matters of probate, the administration of estates and orphans' business, embracing all of the subjects and powers enumerated in and conferred by Sections 4,201, 4,203, 4,204, 4,205, and 4,208 of the Code of Tennessee, and concurrent jurisdiction with the Chancery Courts of Shelby County over the persons and estates of idiots, lunatics, and other persons of unsound mind; and of proceedings for the partition or sale of estates by personal representatives, guardians, heirs, tenants in common, joint owners or coparceners, for the sale of lands at the instance of the creditors of the descendants, if the personal property is insufficient to satisfy the debts of the estate, and for the allotment of dower; and it is hereby vested with all the powers of a Chancery Court touching these matters. The Judge of said Probate Court is also hereby vested with all the powers conferred by law upon Judges of the inferior Courts in this State. From the judgment of said Probate Court, an appeal shall lie directly to the Supreme Court of this State, and to no other Court."

The Act was amended by Chapter 141 of the Acts of

1881, entitled "An Act to amend the Act of 1870, chapter 28, now section 316h of Thompson & Steger's Code, establishing the Probate Court of Shelby county." Section 1 of this Act confers upon the Probate Court certain jurisdiction of a county court exercised at its quorum terms, and section 2 of the Act provides that the Probate Court "shall have and exercise all the jurisdiction and powers of a chancery court over all the persons and matters embraced within its jurisdiction by said section 316h of the Code, and by this act, and shall also have and exercise all the powers and jurisdiction over the persons and matters committed to its jurisdiction which are now conferred by law on the County Courts or County Judges in other counties."

The question as to how far the jurisdiction of the probate court was concurrent with that of the chancery court, and as to what matters and things, came before this court in *England* v. *Pearson*, 84 Tenn. (16 Lea), 443, 1 S. W., 42, in 1886. The court pointed out that the Act of 1881 expressly conferred concurrent jurisdiction upon the probate court with the chancery court over persons and estates of idiots, lunatics, and other persons of unsound mind, and proceedings for the partition or sale of estates by personal representatives, guardians, heirs, tenants in common, joint owners or coparceners; for the sale of lands at the instance of creditors of decedents, where the personalty it insufficient to satisfy the debts of the estate, and for the allotment of dower. And that the Act further invested said court with all the powers of the chancery court touching these matters. This court then said [page 447]:

"We think the proper construction of the above language is that all the power of a chancery court was mere-

ly intended to be conferred upon said probate court touching the matters over which it was invested with concurrent jurisdiction with the chancery court.''

It is urged by counsel that in making the above decision the court only had before it the Act of 1870 and the amendment of 1881, as those Acts were brought into Milliken and Vertrees' Code, section 354, and that section 2 of the amendatory Act of 1881 was not properly brought into that compilation. However, section 2 of the Act of 1881 was properly brought into section 387 of Shannon's Annotated Code 1917, and that section of Shannon's Annotated Code was expressly referred to and the limitation of the jurisdiction of the probate court announced in *England* v. *Pearson* was repeated and adhered to in *Chester* v. *Turner,* 153 Tenn., 451, 284 S. W., 365.

As construed, therefore, there is nothing in the Act of 1870 nor in the Act of 1881 empowering the Probate Court of Shelby County to sanction an unauthorized investment by a guardian of a ward's funds.

It is urged by counsel that the bar, trust officers, and others, have entertained a different view as to the powers of the Probate Court and that the ruling of the Court of Appeals herein will bring about confusion. We can scarcely believe that any general impression, such as suggested by counsel, prevailed in Memphis respecting the jurisdiction of the Probate Court. After the decision in *England* v. *Pearson,* by chapter 186 of the Acts of 1889 authority was procured from the Legislature for the Probate Court to authorize a guardian to trench upon the *corpus* of his ward's funds. No such legislation would, of course, have been desired, if it had been thought the Probate Court had jurisdiction concurrent with the chancery court over minors and their estates.

■ If the bar at Memphis has labored under the impression that the Probate Court possessed such jurisdiction as is here claimed for it by counsel, this notion grew up in the face of the decisions of this court in *England* v. *Pearson* and *Chester* v. *Turner*. We must adhere to those decisions, since ''Decisions construing the Constitution or acts of the Legislature should be followed, in the absence of cogent reasons to the contrary, inasmuch as it is of the utmost importance that our organic and statute law be of certain meaning and fixed interpretation.'' *State ex rel.* v. *Nashville Baseball Club,* 127 Tenn., 292, 303, 154 S. W., 1151, 1154, Ann. Cas., 1914B, 1243.

■ It is urged, however, that the investment of this ward's funds in the securities mentioned, even if illegal at the time it was made, has since become legal by reason of the provisions of chapter 100 of the Public Acts of 1931. Authorities are cited for the proposition that a trustee is not liable for loss on investment which at the time it was made was unauthorized if that investment by subsequent events becomes a legal investment. But the authorities show that this rule is only applicable when a depreciation occurs after the investment becomes legal. So that if we desired to apply the rule in the case before us, we could not, there being no showing as to when the depreciation in the securities here involved occurred. 65 C. J., 820; Bogert on Trusts and Trustees, section 614, and cases cited.

■ To the original bill filed herein, Manhattan Savings Bank & Trust Company and Manhattan Securities Company filed an answer and later a cross bill to which they made the guardian and the sureties on her bond defendants. As cross-complainants, Manhattan Savings

Bank & Trust Company and Manhattan Securities Company prayed, in the event they should be held liable to the complainant ward, they have a decree over against the guardian and the sureties on her bond. As heretofore stated, the chancellor dismissed the bill and had no occasion to rule on the prayer of this cross bill. The Court of Appeals, however, sustained the original bill and it is assigned for error that after so doing they did not give Manhattan Savings Bank & Trust Company and Manhattan Securities Company a decree over against one of the sureties on the guardian's bond who was brought before the court. It appears that the guardian, a resident of Mississippi, and the other sureties were not brought into court.

We do not think Manhattan Savings Bank & Trust Company and Manhattan Securities Company are entitled to any judgment over against this surety on the guardian's bond. At most, the surety was a joint tortfeasor with these two defendants in permitting this diversion of the ward's funds. Under the facts of this case, we see no ground upon which Manhattan Savings Bank & Trust Company and Manhattan Securities Company could claim contribution or indemnity from the surety on the guardian's bond.

The petition for *certiorari* is accordingly denied.