HINES, Veterans' Administrator, v. THOMPSON.—148 S. W. (2d) 376.

Middle Section. May 25, 1940.

Certiorari Denied December 14, 1940.

J. G. Sims and H. K. Hodgson, both of Murfreesboro, and J. W. Holman, of Fayetteville, for Veterans' Admr.

Judge Joseph Higgins, of Nashville, and Lawson H. Myers, of Fayetteville, for Mrs. Thompson.

KETCHUM, J.   This case is before us on a petition for a writ of error filed by Frank T. Hines, Administrator of the World War Veterans' Bureau, seeking a review of a decree of the county court of Lincoln County entered December 16, 1938, nunc pro tunc as of March 2, 1932, approving a loan of $1,100 of the funds of a non compos veteran of the World War on the security of a first mortgage on a house and lot in the town of Fayetteville.

The question arose on an exception of the Veterans' Administrator to the final account and settlement of Mrs. Ermir Thompson, executrix of the will of J. Henry Thompson, deceased, as guardian of Curtiss Smith, the non compos veteran, in which she claimed credit for the said $1,100 and the interest accrued thereon, notwithstanding the fact that the mortgage executed as security for said loan had been foreclosed and the property sold for $485, resulting a loss of some $800 to the ward's estate.

The contention of the Veterans' Administrator is that the requirements of section 8496 of the code regulating the lending of surplus funds of the ward were not complied with by the guardian because there was no record of any application to the court for the approval of the loan, or any appraisal of the property, or any order of court authorizing the guardian to make the loan.   Judge A. E. Simms was the county judge having charge of the guardianship at the time the loan was made and also at the time of the trial.   The matter was first brought to his attention by the Veterans' Administrator in February, 1936, which was about two years after the loan was in default in the payment of both principal and interest.   The administrator at that time wrote Judge Simms asking him to require Thompson, the guardian, and his corporate surety, to restore the amount of the loan to the ward's estate because there had been no approval of the loan by the court.   In reply to this letter Judge Simms wrote the administrator that he had in company with Hubert Holman, an attorney of the Fayetteville bar, W. O. Loving, a licensed real estate dealer, and H. E. Dryden, president of the Elk National Bank, inspected the property before the loan was made, and placed a valuation of $2,200 on it, and that he had authorized the guardian to make the loan, and he suggested that he enter a nunc pro tunc order at that time as of date March 2, 1932, authorizing the guardian to make the loan, and he asked the administrator to consent to the entry of such a nunc pro tunc order.   In this letter Judge Simms sent to the administrator a certificate signed by H. T. Holman and W. O. Loving in which they stated that they had at the request of J. Henry Thompson, the guardian of Curtiss Smith, the non compos veteran, inspected said property and appraised it at $2,200, and had so reported to

him. This certificate is not dated or sworn to, but the record discloses that it was signed about February, 1936. Mr. Dryden had died in the meantime.

Mr. Hines, the Veterans' Administrator, declined to consent to the entry of such a nunc pro tunc order and insisted upon the guardian and his surety being required to restore the fund to the word's estate.

Thereafter J. Henry Thompson died, and his widow, Mrs. Ermir Thompson, qualified as executrix of his will; and in her final account and settlement of said guardianship, she claimed credit for the amount of said loan and the accumulated interest thereon, and the Veterans' Administrator filed exceptions to this item of her settlement on the grounds above set out.

Judge Simms, conceiving that he was incompetent to pass upon said exceptions, recused himself and Hon. B. E. Holman of the Fayetteville bar was elected special judge of said court to hear the proof and pass upon said exceptions. Judge Simms was the only witness and testified that he had gone with the appraisers to inspect the property and had authorized the guardian to make the loan. There was no written application for authority to make the loan, no order or memorandum appointing appraisers and no report of the appraisers; there was no certificate as to the title to the property, and no order of court or memorandum of any kind showing that the court had authorized the making of the loan. The special judge entered the nunc pro tunc order and overruled the exceptions to the guardian's settlement, and the assignments of error filed along with the petition for the writ of error challenge the correctness of his ruling. Without setting out the assignments of error separately we will proceed to the discussion of the questions raised thereby.

The effort of Mrs. Thompson, the executrix of the guardian J. Henry Thompson, deceased, is clearly to show that he complied with the requirements of section 8496 of the code regulating the loaning of the surplus funds of a ward's estate on real estate security. The statute provides that the guardian "May lend the same on the security of a mortgage or of a trust deed on real estate, the amount lent not to exceed one-half of the actual value of the real estate mortgaged, and provided that said real estate shall have been valued, appraised and reported in writing by three disinterested parties appointed by the chancery, county or probate court of the county in which the land lies, upon application to the said court to that end, and approval thereby. But where the title to same shall have been legally guaranteed by some solvent person, firm, or corporation, the approval of the court shall not be required as above set out, except as to appraisal."

The county court is a court of record and we think it is clearly implied from the language of the statute that there should be a

formal application by the guardian to the court for the authority to make the loan, the appointment of the three disinterested appraisers, their written report, and an order of the court authorizing the making of the loan. There is no pretense that this was done in the instant case. While Judge Simms does testify that he did authorize the guardian to make the loan, and that he went with the appraisers to inspect the property, it was done orally and no court record or memorandum of any kind was made of the transaction. It does not appear that any action was taken in open court. It does not even appear that he appointed the appraisers or that the appraisers made their report in writing, or that they made their report to the court. The belated certificate of the two surviving appraisers, made four year after the loan was made, recites that they were requested by the guardian to inspect the property and place a value on it, and that they did so and reported to him that in their opinion it was worth $2,200. This certificate does not recite that they were disinterested, but it is stipulated that they were disinterested.

We do not think that this was sufficient compliance with the statute. There is not only no order sanctioning the loan, but there is also no written appraisal as required by the statute upon which a valid order could have been predicated. The authority of the guardian to loan the funds of the ward is purely statutory, and the authorities generally hold him to a strict compliance with the requirements of the statute. The leading case on this subject in this state is Woodward v. Bird, 105 Tenn., 671, 682, 59 S. W., 143, in which it was held that the authority to make a loan on real estate upon the conditions prescribed in this statute did not confer authority upon the guardian to purchase with his ward's funds a note secured by a mortgage on real estate. Other cases holding the guardian to strict accounting are Freeman v. Citizens National Bank, 167 Tenn., 399, 410, 70 S. W. (2d), 25; Humphries v. Manhattan Savings Bank, 174 Tenn., 17, 122 S. W. (2d), 446; McCuiston v. Haggard, 21 Tenn. App., 277, 109 S. W. (2d), 413. These cases hold that such unauthorized investments are regarded as unlawful diversions of the ward's funds for which the guardian and his surety are liable to the ward in case of loss.

Judge Simms says he does not know why there was no written application for the approval of the loan, or why the appraisers did not file a written report, or why no order was entered approving the loan; but he does not claim that any of these things were done, or that anything was done in open court. Under such circumstances there was no approval of the loan by the court. What Judge Simms did in going with the appraisers and inspecting the property and approving the loan was his personal or individual action, and not the action of the court over which he presided. Courts speak through their minutes, and when there is no minute entry signed by the judge there is no action by the court. On this subject it was said in State

v. True, 116 Tenn., 294, 312, 95 S. W., 1028, and repeated in Wilkinson v. Shale Brick Corporation, 156 Tenn., 373, 378, 299 S. W., 1056, 2 S. W. (2d), 89; Mullen v. State, 164 Tenn., 523, 528, 51 S. W. (2d), 497, 498:

"However formal and full those proceedings may have been, not having reached the minutes of the court, they do not constitute any valid action upon its part. Courts of record and legislative bodies . . . speak only through their records. The law requires records to be made of their proceedings and that they be signed. . . . The records of courts and legislative bodies are the sole witnesses of their proceedings, and they can only be proven by duly certified copies of such records. Parol evidence cannot be heard for this purpose. These are well-established rules, and every principal of public policy imperatively forbids any departure from them."

But it is very earnestly argued that the strict requirements of the general guardianship statute on this subject, Code section 8496, are not exclusive, and that by the provisions of the Disabled Veterans' Guardianship statute at Code, section 8552, any investment meeting the requirements of the general guardianship statute, or any investment approved by the court, will be a legal and proper investment of the ward's funds. That section of the code is as follows:

"Every guardian shall invest the funds of the estate in such manner or in such securities, in which the guardian has no interest, as allowed by law or approved by the court.

This construction has been placed upon this statute in Re Parker, 168 Tenn., 327, 77 S. W. (2d), 816, in which it was held that the investment of the ward's funds in the purchase of an endowment insurance policy, under the authority of the court, was a legal investment of the ward's funds. The court said that this section of the Veterans' Act empowered the county court to authorize the investment of the ward's funds in an endowment insurance policy although such an investment was not authorized under the general guardianship statute, Sections 8496-8500, or by section 9596 of the Code. And it was said that the Arkansas supreme court had placed the same construction upon the statute in Hines v. Mills, 187 Ark., 465, 60 S. W. (2d), 181.

In the Parker case the county court had approved the investment and the court said that the only question presented in that case was whether the Veterans' Guardianship Act "empowered county courts to authorize guardians to make the particular investment." It is this which distinguishes the Parker case from the case at bar. Here there was no court action, no minute entry showing that the court authorized or approved the making of the particular loan.

Since there was no court action, and no order approving the loan was directed to be entered, the nunc pro tunc order was improperly entered. Chancellor Gibson states the rule in his Suits in Chancery, at section 578, as follows:

"To justify a nunc pro tunc order or entry, at a subsequent term, there must be some matter in the nature of a record to base it upon, such as, (1) a decree actually drawn at the time, but, by mistake, not entered; or, (2) an entry on the chancellor's docket; or, (3) a memorandum or opinion in writing by the chancellor."

State for Use of Obion County v. Bond, 157 Tenn., 326, 8 S. W. (2d), 367, 369, is similar in its material aspects to the case at bar. In that case Obion County sued to recover from a former clerk of the county court and his surety the sum of $5,397.40 for fees retained by him in excess of the amount allowed under the Salary Act, Code, section 10727. The defendant admitted the collection of the fees claimed but alleged that he had paid them out to deputies and clerks for assistance in the conduct of the office, and by cross-bill he prayed for a ratification of the expenditures and for a decree nunc pro tunc approving the expenditures made and allowing him credit therefor. The court in denying this relief held that the Salary Act contemplated that the application for leave to employ clerks and deputies should be made in advance, and declined to ratify their employment without the sanction of the court previously obtained. And in denying the application for the nunc pro tunc order, the court said: "Moreover, none of the elements essential to a nunc pro tunc order are here presented. Such an order contemplates a disposition made at a previous time or term. This is fundamental. This is exactly what was not had in this case. There was no disposition of the question of the propriety of the allowances now asked for."

It is very earnestly insisted in behalf of the executrix that the nunc pro tunc order was properly entered in this case because the county judge had actually approved the loan, and that the nunc pro tunc order merely put upon the minutes the order previously granted. We cannot assent to this view. There is nothing to show that there was any formal application to the county court, either orally or by petition, for the approval of the loan, or that the court appointed the appraisers, or that the appraisers filed any report to the court. The statute requires that the report of the appraisers shall be in writing. There was nothing of record to show that the court acted officially, and Judge Simms does not testify that there was any court proceeding, or that any order approving the loan was passed, and that by inadvertence or neglect on the part of some one the order was not entered. The essential facts upon which to base a decree of nunc pro tunc are lacking.

The argument is made that a presumption will be indulged that the making of the loan was duly authorized from the fact of the execution of the note and mortgage. There is no recital either in the note or in the mortgage that the court had approved the loan, and we do not see that the fact that a mortgage and note were executed raises a presumption that an order was entered authorizing the guardian to make the loan. Aside from this, the testimony of Judge

Simms is that there was no court proceeding and that no order was passed. We do not think that the mortgage and note can be made the basis for the entry of a nunc pro tunc decree authorizing the making of the loan since there is no recital in the mortgage and note that the said loan had been approved by the court.

It results that the decree of the special judge of the county court will be reversed, the nunc pro tunc order approving the loan as of March 2, 1932, will be set aside and for naught held. The exception of the Veterans' Administrator to the final account and settlement of Mrs. Thompson as executrix of J. Henry Thompson, guardian of Curtiss Smith, a non compos mentis, will be sustained. The cause will be remanded to the county court of Lincoln County for the settlement of the guardian's account and for such other and further proceedings as may be necessary.

The costs of this court and the costs of the county court incident to the exceptions of the Veterans' Administrator to the allowance of this item of the guardian's settlement, and the proceedings thereon, will be adjudged against Mrs. Thompson as executrix and the said Hartford Accident and Indemnity Company, the surety on the guardian's bond.

Anderson, J., and Adams, Special Judge, concur.