LINCOLN TRUST COMPANY, Guardian of WM. T. WASH, Respondent, v. EDWARD B. WOLFF et al.; WASHINGTON WEST et al., Appellants.

**St. Louis Court of Appeals, December 17, 1901.**

1. **Guardian, breach of trust:** LIABILITY OF SURETY ON GUARDIAN'S BOND. A breach of a guardian's bond occurs, for which his sureties are liable, when he surrenders a note to a maker, and thereby converts it to his own use.

2. ——: ——: CONTINUING BREACH OF BOND. And this breach can only be continued so as to bind the sureties on his second bond by the guardian carrying the note forward into a final settlement of his account as guardian.

3. ———: ———: ANNUAL SETTLEMENT OF GUARDIAN NOT A FINAL JUDGMENT. An annual settlement of a guardian has not the effect of a judgment to bind a surety on the guardian's bond.

Appeal from St. Louis City Circuit Court.—*Hon. John A. Talty,* Judge.

REVERSED AND REMANDED *(with directions).*

### STATEMENT OF THE CASE.

The nature of the controversy, its history, its facts, and the authorities that control the decision of the circuit court, are with great lucidity and clearness stated in the report of Fred E. Wislizenus, Esq., to whom the case was referred. The report is as follows:

"This cause comes up to the circuit court from probate court upon the appeal of Washington West, one of the sureties on the bond of Edward B. Wolff, guardian of William T. Wash, a person of unsound mind, from a judgment rendered by the court upon motion of the Lincoln Trust Company, the present guardian of said *non compos,* against said Wolff, predecessor of said guardianship, and the sureties on his bond.

"The motion is based on sections 47, 48 and 51 of the Revised Statutes, which sections, concerning executors and administrators, are made applicable to the bond of the guardian of an insane person when this guardianship ends, by section 3693.

"E. B. Wolff was guardian of Wash from 1891 till his resignation.

"The bond on which the sureties are called to account in this case is dated January 15, 1897, and is approved by the judge of probate court, June 21, 1897.

"It is conditioned that 'if the said Edward B. Wolff shall take due and proper care of said William T. Wash and manage and administer his estate and effects to the best advantage,

according to law, and shall faithfully do and perform all such other acts, matters and things, touching his guardianship, as may be prescribed by law, or enjoined on him by the order or decree of any court of competent jurisdiction, then the above bond to be void,' and is in the penal sum of $6,000.

"E. B. Wolff's resignation as such guardian was accepted on January 16, 1900. At the same time he filed a settlement. On January 22, 1900, the Lincoln Trust Company was appointed guardian, accepted the trust, and, shortly thereafter, made this motion wherein it states that E. B. Wolff has not made final settlement as such guardian, asks that he be compelled to do so, that the court ascertain the amount actually due, and render judgment on the bond against principal and sureties for the penalty thereof to be satisfied by payment of amount found by the court to be due.

"In the settlement filed January 16, 1900, which was in evidence before me, E. B. Wolff shows a balance against himself of $1,607.54, of which amount $407.54 is reported to be cash, and the balance a note of Francis T. Bryan for $1,200.

"The controversy turns on this note.

"This note, dated October 13, 1886, for $1,200, with interest from date at six per cent per annum, signed by Francis T. Bryan, is payable to 'M. A. Wolff, guardian of Wm. T. Wash.' M. A. Wolff was E. B. Wolff's predecessor in the guardianship of Wm. T. Wash, E. B. Wolff succeeding M. A. Wolff as such guardian upon the latter's death in 1891. This Bryan note was taken over by E. B. Wolff as an asset of Wm. T. Wash's estate. Up to and including 1895, E. B. Wolff charges himself annually with the interest on this sum, and the indorsements on the note similarly show payment of this interest.

"On November 16, 1896, Francis T. Bryan received the following letter:

"'St. Louis, Nov. 16, 1896.
" 'Capt. F. T. Bryan, City.

"'Dear Sir:—Enclosed please find your note, stamped paid; also receipt for the interest money credited to your account, on account of interest paid by us to you, as trustee.

"'Yours respectfully,
"'M. A. WOLFF R. E. Co.,
"'Per E. B. WOLFF, Pres't.'

"Enclosed was the note with signature 'Francis T. Bryan' heavily crossed out, and with 'Paid, Nov. 13, 1896,' plainly stamped transversely on the face of the note.

"The note in this condition is still in the possession of Francis T. Bryan, who refuses to surrender it to the Lincoln Trust Company, or indeed, to anyone, and claims that he owes nothing on it.

"E. B. Wolff in his annual settlement next succeeding this mutilation of this note (January, 1897) charges. himself on this Bryan note with $78 interest, which is for one month more than the year, and covers the interest to November 13, 1896, the date of payment given in the stamp across the face of the note, but in that same settlement, in setting forth the items of which the balance on hand consists, the Bryan note for $1,200 is included. In his subsequent settlements, three in number, E. B. Wolff charges himself with no further interest on the Bryan note, but regularly reports that note as a part of his assets on hand.

"In this case originating in probate court, there is no pleading save the original motion. The appealing defendant, the surety West, first took the position at the hearing before me, that this note was in fact not paid; that its surrender to the maker, with all the indicia of payment, was a mistake; upon which showing defendant insisted that the Lincoln Trust Company should be compelled to take the claim on that note,

and that Wolff (and his bondsmen) should be credited on the balance due to that extent.

"Defendant's right to introduce evidence tending to prove that the note was not paid was urged with much zeal; and it became my duty to rule on the question early in the hearing.

"A referee ordinarily prefers to err in the direction of admitting contested evidence. But when the investigation asked for threatens to become the main inquiry, he should not consume time and pile up expenses on an issue which he deems irrelevant.

"I accordingly passed on the objection to this line of evidence when first offered, sustaining the objection on the view that on the question of E. B. Wolff's liability, it is immaterial whether the Bryan note has been paid or not. If the note has been paid, E. B. Wolff is liable for its proceeds. If, on the other hand, it is still owing, then E. B. Wolff has placed it out of his power to turn it over to his successor, as the law requires him to do.

"More than that, he has armed the maker of the note, who claims that the note is paid, with a strong prima facie proof of payment.

"An inquiry here as to whether the note is actually paid might easily lead to absurd consequences. It might well be that at the end of an inquiry, I might find the note unpaid, and compel the Lincoln Trust Company to take the claim as an asset to the extent of $1,200; while the Lincoln Trust Company might thereafter fail in its suit against Mr. Bryan, who is in no way bound by such finding as I might make. It is not fair to the Lincoln Trust Company or its ward that they should be burdened with the trouble, expense and risk as to ultimate issue of litigation brought about by Mr. Wolff in mutilating that note and surrendering it to the maker thereof. On the other hand, Mr. Wolff has no just ground to complain if he is charged with that note. He then can proceed for himself against Mr. Bryan, who is admittedly solvent. Should

he lose that suit, on the ground that the note is already paid, it demonstrates the correctness of holding him for the note as guardian. Should he, on the other hand, collect from Mr. Bryan, he recovers his money, incurring only such trouble and expense as resulted from his blunder. Such trouble and expense should rightfully fall on him and not on the Lincoln Trust Company.

"As I view it, the present guardian is not bound to take this note, even though it could be shown that the note is unpaid. The company is entitled to the note, not a mutilated paper, which expressly negatives the maker's indebtedness. The thing to which the company has a right (the note) has been so altered that there is no obligation to take it. The claimant can treat Mr. Wolff's action as in the nature of a conversion. Any wrongful act which negatives or is inconsistent with the owner's right is, per se, a conversion. Thus in McLeod v. McGhie, 2 Scott's New R. 604, the defendant, who had given plaintiff a written signed guarantee and thereafter destroyed his signature to the paper, was held liable to the plaintiff in trover, the damages being in sum guaranteed.

"On these considerations I sustained objections to defendant's proffers of evidence tending to prove that the Bryan note was in fact unpaid.

"It is also true, however, that when this question was discussed, my attention was not directed to the fact that the bond is of later date than the surrender of the mutilated note. While I was under the impression that E. B. Wolff had only given one bond as guardian, the question of E. B. Wolff's liability and that of his bondsmen seemed identical.

"My attention was then called by defendant's counsel to the fact that the bond was considerably later in date than November 16, 1896, in the motion for nonsuit. Defendant thereupon renewed his offers to prove that the note was still unpaid. I still adhere to my ruling; for if I was correct in my first ruling, it was obvious that the fact that the note was

unpaid, could only fasten the liability on defendant with double force.

"Though I consistently sustained all objections on the point and gave notice that I would sustain such objections if made, Mr. Wolff, in response to questions of defendant's counsel, plaintiff's counsel expressly refused to object, gave testimony tending to show that the note is still unpaid; and it was admitted by plaintiff on defendant's proffer, that on the face of the books of the M. A. Wolff Real Estate Company it would appear that the note was unpaid.

"When the cause comes on for argument, however, defendant reversing his attitude, insists that under the evidence the note was paid November 16, 1896, long before the bond in suit was given; that the proceeds of the note were converted by E. B. Wolff prior to the giving of the bond in suit; by reason whereof it is urged, there was no breach of the second bond.

"I do not agree to this view for several reasons. In the first place I can not concede that demonstration of the liability of the prior bondsmen would discharge the sureties on the second bond. As it is said by Judge SHERWOOD in State to use of Wolff v. Berning, 74 Mo. 87 loc. cit. 98: 'It quite often may happen that a breach of a bond is a continuing breach, commencing during the period of the first bond and extending down to and through the period of the second bond where the maladministration would be a breach of both bonds.' That case is strikingly similar to the one before us. An executor's first bond was given in August, 1872; his second bond in September, 1873. In October, 1872, he deposited notes belonging to the estate as collateral for his own note which he discounted, depositing the proceeds to his own account. At the time of filing the second bond the executor was insolvent. Judgment was recovered against both sets of sureties. See Wolff v. Schaeffer, 4 Mo. App. 367, and 74 Mo. 154; State v. Berning, 74 Mo. 87.

"In State ex rel. Hyslop v. Bilby, 50 Mo. App. 162, the question of the liability of the second bond for money misappropriated by the guardian during the existence in force of a prior bond is discussed as follows: 'Notwithstanding such money may have been misappropriated by the guardian before the execution of the second bond, the one here sued on, yet such sum was carried forward in his settlements and made up a part of the balance against him on his final settlement, and his failure to pay such sum occurred during the existence of the latter bond, and is a breach thereof. The statute regulations of administrator's bonds are made applicable to the bonds of guardians. And section 30, of the administration statute of 1879, provides that when the additional bond is approved, it shall discharge the former securities from liability arising after filing the same. But the fact that a breach of the old bond occurred by the malfeasance of the guardian so as to render the sureties thereon liable, does not prevent liability also attaching under the new bond for failing, as before stated, to pay over the amount found due on his settlements.'

"The principle is also well illustrated by the case of State v. Drury, 36 Mo. 286, which was a suit on the first bond for misappropriation of funds by the curator during its existence, though there was already judgment for the whole loss on the second bond. The defense had been set up to the suit on the second bond that the whole amount had been wasted under the first bond, but proved unavailing.

"Nor does State to use, etc., v. Jones, 89 Mo. 470, bring me to a different conclusion. In this case it was held that the sureties on the second bond were not liable for guardian's commissions which were claimed and allowed in settlements previous to the execution of the second bond.

"This decision, however, not only recognizes State v. Berning, and State v. Drury, supra, but it further seems that the terms of the bond present a distinguishing feature. In that case the bond was conditioned that the curator, in the lan-

guage of the opinion 'shall take due and proper care of said (ward), and manage and administer his estates,' etc.

"It would seem the bond there discussed was not further conditioned than the guardian 'shall faithfully do and perform all such other acts .... as may be .... enjoined on him by the order or decree of any court of competent jurisdiction,' as is true in the case before us. This obligation, as I understand the decisions and as seems clear on principle, makes the sureties in the second bond liable for failure to pay over the assets, even though, as in the case above cited, the actual wasting of assets occurred under the first bond.

"But let us concede, for argument's sake, that the sureties on the second bond are not liable for waste committed before they gave the bond; still defendant fails, it seems to me, to make out his defense. Let us, for argument's sake, even concede that despite defendant's vigorous effort throughout the trial to prove this Bryan note unpaid, the fact be found that after all the note was paid November 16, 1896. The defendant must still make out a conversion of the proceeds; for the collection of the note was of course simply in the line of curator's duty. Of this defendant naturally presented no evidence, since that theory of defense did not occur to him till all the evidence was in.

"The presumption is that all the assets were in the hands of this curator when the second bond was given (see State to use, etc., v. Paul, 21 Mo. 56, in which the decision turns on this assumption).

"The record before me does not show, so far as I have discovered, that the curator had wasted the proceeds of this Bryan note before the bond here in suit was given, assuming that he collected it.

"For these reasons I am of the opinion that the defendant, as surety on the second bond, is liable for the value of the Bryan note; and this, too, whether or not the note was paid to E. B. Wolff.

"Interest on the note to November 16, 1896, is accounted for by the curator in his settlements. I do not find any evidence that he charged himself with subsequent interest. I accordingly report as my finding that defendant is liable on account of this item of the Bryan note for $1,200, with interest from November 16, 1896.

"In addition, E. B. Wolff, in his last settlement, reported a cash balance of $407.54; which the court increased by $4.90, being a credit asked by the curator for advertising his resignation, and disallowed (properly beyond question, R. S. 1899, sec. 44) by the probate judge. I find the liability of E. B. ·Wolff, curator to be accordingly:

Cash as per his last settlement..............$   407.54
Disallowed credit as above ................       4.90
Value of face of Bryan note ..............   1,200.00
Interest thereon face November 13, 1896, to
    February 4, 1901, date of filing this report,
    at the rate of 6 per cent per annum........     303.00
                                            _____
                                            $1,915.44"

West filed his motion to set aside the report of the referee, which was by the court overruled and judgment was entered as recommended by the referee. After an unsuccessful motion for a new trial, West appealed.

*John M. Dickson* for defendant West.

"A surety is not responsible for the past defaults of his principal unless made so by the express terms of the contract." 24 Am. and Eng. Ency. Law, p. 751; State to use v. Jones, 89 Mo. 470; State to use v. Drury, 37 Mo. 281. The surrender of a note, marked "canceled," to the maker is only prima facie evidence of payment and in an action between the maker and the holder or owner may be explained and will not prevent such holder or owner from recovering. Boulware v.

Bank, 12 Mo. App. 544; Blodgett v. Bickford, 30 Vt. 733; Eaton v. St. Charles Co., 8 Mo. App. 177.

*James E. Hereford* for respondent.

(1) The note was paid at the time of its surrender, and either the amount of said note or the note carried in guardian's balance, there was a breach of the second bond in failing to pay over on final settlement. State ex rel. v. Bilby, 50 Mo. App. 162; State v. Drury, 36 Mo. 28. (2) If the note was not paid, then the acts of the guardian, Wolff, in mutilating and surrendering the note, was conversion. It was, moreover, a continuing conversion, for which the second bond is liable. State to use v. Berning, 74 Mo. 87.

BLAND, P. J.—I. The referee refused to hear evidence as to whether or not the twelve-hundred-dollar note of Bryan had been actually paid or had been, by mistake, stamped and delivered to the maker. This ruling is assigned as error by appellant. It seems to us that for the purpose of the inquiry it was immaterial whether Wolff had collected the note or not. His obligation was to either turn over the note to his successor, or the money due thereon. What he sought to do was to excuse himself from this duty by turning over to his successor a doubtful lawsuit for the recovery of what had been a valuable and available asset of his ward's estate. Evidence that the note had not been paid would not have the least bearing on the issues nor tend to relieve Wolff from his obligation to produce the note unmutilated by any act of his, which was out of his power to do.

II. The note was mutilated and its availability as an asset destroyed or greatly impaired, or else the note was paid before the bond sued on was executed, and the question in the case is whether or not West, as a surety on the bond, is liable under the facts as found by the referee. The strong presumption

is that the note was paid at the time or before it was stamped "paid" and surrendered to the maker. The subsequent settlement made by Wolff in which he reported to the probate court that he had the note on hand, is presumptive evidence that he had then converted the proceeds of the note to his own use and reported the note on hand in order to cover up his delinquency, and there is no sufficient evidence in the record to overturn these presumptions. But if the other theory (of which there is very slight evidence) be adopted, i. e., that the note was not paid, but, by the mistake of Wolff or his agents, stamped paid and surrendered to Bryan, the maker, the fact yet remains that the estate of Wolff's ward has been deprived of a valuable asset by the gross carelessness of Wolff or his agents and that all this was done prior to the execution of the bond sued on. Carrying the note in his settlements after he had parted with it, does not change the fact that he had parted with it and had nothing to show for it. On either theory of the evidence it appears to us that Wolff's liability to the estate became fixed at the time he surrendered the note to the maker and that the conversion of this asset should date from that period. There is no other period of time indicated by the evidence from which it can be dated. Dating, then, the breach at the date of the conversion, did the breach continue after the giving of the bond sued on? If so, West is liable. If it did not so continue, he is not liable. In the discussion of this question it will be well to keep in mind the distinction between a continuing liability and a continuing breach of the bond from which the liability arose. The former will continue until discharged by payment, by agreement or by operation of law. The latter was completed when Wolff stamped the note paid, mutilated the signature of Bryan and surrendered the note to him as paid. This breach could only be continued so as to bind the sureties on the second bond, by Wolff carrying the note forward into a final settlement of his account as guardian; had such a settlement been made after the execution of

the second bond, the appellant would have been bound by
the judgment of final settlement and estopped to go behind
that judgment to show that the breach was actually com-
mitted before he became a surety, and in this sense the
breach, as to him, would have been a continuing one.    State
to use, etc., v. Drury, 36 Mo. 281; State to use of Wolff v.
Berning, 74 Mo. 87; Wolff v. Schaeffer, 4 Mo. App. 367;
State ex rel. Hyslop v. Bilby, 50 Mo. App. 162.    While as
to the sureties on the first bond, they, not being parties to
the settlement nor bound by it, the respondent, in a suit on
their bond, would not be precluded by the settlement and could
go behind the settlement and show that the conversion actually
occurred during the life of their bond for the purpose of hold-
ing them liable.   Authorities supra.   The settlements made
by Wolff, after the giving of the second bond in which he re-
ported the note as on hand, were annual settlements and had
not the effect of judgments to bind the appellant (Myers v.
Meyers, 98 Mo. 262; North v. Priest, 81 Mo. 561; Baker et
al. v. Runkle's Exec'r, 41 Mo. 391) and did not, therefore,
have the effect to carry forward or continue the breach so as
to bind the appellant.   The proceeding is not based on a final
settlement of Wolff, but is to force him to make such a settle-
ment and to ascertain the liability of the appellant on the facts
ascertained by the settlement.

The facts show beyond controversy that the breach oc-
curred before the giving of the second bond, and as we have
shown, nothing was done to continue the breach over into the
life of this bond, we conclude that appellant is not liable for
the twelve-hundred-dollar note or for the interest thereon
(three hundred and three dollars), and we reverse the judg-
ment and remand the cause with directions to the circuit court
to enter judgment against appellant for four hundred and
twelve and forty-four one-hundredths dollars (the amount
found due after deducting the twelve-hundred-dollar note and

Vol 91 app—10

its interest), with interest thereon at six per cent per annum from February 4, 1901, the date of the filing of the referee's report. Judge *Goode* concurs; Judge *Barclay* not sitting.