From a judgment rendered by the circuit court of the City of St. Louis for $8,047.14 in favor of the successor guardian and against the estate of the deceased former guardian of an insane person, and the surety on the guardian's bond, the surety, American Surety Company of New York, a corporation, has appealed.
The facts are undisputed and, so far as material, are as follows: On April 19, 1930, Harry M. Wagner was by the probate court appointed guardian of the person and estate of Ernest C. Keisker, an insane veteran. On that date the guardian qualified and filed a bond with the Southern Surety Company as surety. That surety company became insolvent prior to May 5, 1932, on which date the guardian filed a second bond with the appellant corporation as surety. This bond is not set out in the record, but in oral argument it was conceded to be in accordance with the statute, [R.S. Mo. 1939, sec. 456, Mo. R.S.A., p. 807] which requires the bond to be conditioned that the guardian will "take due and proper care of such insane person, and manage and administer his estate and effects to the best advantage, according to law, and will faithfully do and perform all such other acts, matters and things touching his guardianship as may be prescribed by law or enjoined on him by the order, sentence or judgment of any court of competent jurisdiction."
On May 21, 1930, Wagner sold some United States Liberty Loan Bonds belonging to his ward and purchased eleven real estate mortgage bonds of the face amount of $500.00 each, being a part of 135 similar bonds aggregating $67,500.00, some maturing before and some at the same time as those purchased by him. They were executed by a corporation and secured by a deed of trust on real estate which provided that all the notes were secured without preference, priority or distinction by reason of priority of negotiation, date of maturity or otherwise. On September 23, 1931, Wagner purchased a real estate mortgage bond secured by a similar deed of trust executed by another company, and on July 1, 1937, exchanged it for a $500.00 bond executed by the company first mentioned. *Page 731 
Prior to 1933 some of the mortgage bonds, maturing before those held by Wagner, came due and were paid in full. In 1933 and again in 1938 defaults occurred in the payment of some of the mortgage bonds coming due and each time the deed of trust was foreclosed, a new company organized to bid in the property and new notes were executed to the bondholders including Wagner as guardian.
[98] Before selling the Liberty Loan Bonds Wagner wrote the regional attorney of the Veterans' Bureau asking his advice and received a reply advising him to make the sale and purchase the real estate mortgage bonds.
Wagner did not procure any court order purporting to authorize the sale of the government bonds or the purchase of the real estate mortgage bonds. In his first annual settlement after this transaction, he mentioned the fact that he had sold Liberty Loan bonds and purchased "1st mortgage bonds", and in his later annual settlements showed that he retained these mortgage notes or bonds without stating the terms of the deed of trust, the name of the maker, or the description or value of the real estate security. These annual settlements were approved by the attorney for the United States Veterans' Bureau and by the probate court.
On May 10, 1938, Wagner resigned as guardian and his successor was duly appointed and qualified. Wagner tendered his final account to which exceptions were filed by the Administrator of Veterans' Affairs. The successor guardian refused to accept the real estate mortgage bonds, and the settlement was ordered filed but not approved by the probate court.
After a hearing the exceptions were sustained by the probate court and Wagner appealed to the circuit court. Thereafter Wagner died and the cause was revived against the executrix of his estate. After a trial in the circuit court the exceptions were again sustained and judgment rendered against the estate of Wagner and his surety on the second bond.
In this court appellant, in substance, claims: (1) That the purchase of the real estate mortgage bonds was in substantial compliance with the statute [R.S. Mo. 1939, sec. 418, Mo. R.S.A., p. 754] and, therefore, there was no breach of the surety bond; (2) If such purchase was not legal, it was made before the execution of the bond by appellant and does not constitute a breach of that bond; (3) In any event, respondent is estopped to complain of the alleged breach, by reason of the approval and ratification of the purchase by the attorney for the Veterans' Administration.
[1] First, was the purchase of the real estate bonds a substantial compliance with the statute?
Section 506, Revised Statutes Missouri 1939, [Mo. R.S.A., p. 845] provides that guardians of insane persons, in making loans, are governed by the statutes relating to guardians of minors. Section 418, *Page 732 
supra, provides that the guardian shall "loan the money of their wards . . ., on prime real estate security, or invest it in bonds of the United States," (or in other specified ways) "and it shall be the duty of the court to require every guardian and curator to make a report at every annual settlement of the disposition made by the guardian or curator of the money belonging to the ward intrusted to him, and if it appear that such money is loaned out, then he shall state the name of the person to whom loaned, the description of the real estate security, and where situated, and its value, which report shall be sworn to by said guardian or curator and filed in the court; and it shall be the duty of said court to carefully examine into such report as soon as made, and if in the opinion of said court the security is insufficient, it shall be the duty of the court to require additional security to be given sufficient to protect the interest of said wards, and if such additional security be not given within such time as the court shall order, not exceeding ten days, it shall be the duty of the guardian or curator to institute suit forthwith on such security to recover the amount due thereon, and he and his sureties shall be liable on their bond for any omission so to do; . . ."
Appellant argues that, as the deed of trust expressly placed all the mortgage bonds upon an equality and as the value of the real estate at the time Wagner purchased was sufficient to secure all the bonds, said bonds were secured by prime real estate security as required by the statute. However, the deed of trust placed all the bonds upon an equality only in the event of a foreclosure; that is, upon a foreclosure all the bonds would share pro rata in the proceeds, but the deed of trust did not in all respects place the bonds purchased by Wagner on full equality with the bonds maturing earlier. It so happened in this case that when the first bonds matured the debtor was able to, and did, pay them in full while the bonds held by Wagner and others maturing later must be discounted at a loss.
Also, the statute requires guardians to "loan the money of their wards [99] . . . on prime real estate security, orinvest it in bonds of the United States", etc. Appellant argues that "loan" and "invest" are interchangeable terms and that the purchase of the mortgage bonds was the equivalent of a loan to the maker of the notes. In support of this argument appellant cites Drake v. Crane, 127 Mo. 85, l.c. 103, 29 S.W. 900, and other cases. In Drake v. Crane this court was considering the investment powers of testamentary trustees. In the other cases cited the question arose under a statute of different wording or a different set of facts from those in the instant case. We concede that these terms are often used interchangeably, but we think the statute now under consideration compels us to make a distinction between them. As to bonds of the United States and other specified bonds, the statute uses the word *Page 733 
"invest", denoting the idea of "purchase", for that is necessarily the way the guardian could acquire such bonds. But as to real estate loans, the statute contemplates that the guardianmake such loans rather than purchase loans already made; this, for the purpose of giving the court power when necessary to require additional security or to compel the guardian to sue for the recovery of the debt whether or not the same be due according to its terms. The rights and liabilities of the parties are fixed at the time the loan is made. So, if the guardian deal directly with the debtor in making the loan, the same will be made in contemplation of the statute, and the statute will become a part of the contract, [Round Prairie Bank v. Downey (Mo. App.), 64 S.W.2d 701] but, if the loan be made to another and later purchased by the guardian, the provisions of the statute could not be enforced against the debtor. Many cases hold that guardians must strictly follow the statute in investing the funds of their wards. [See In re Taylor's Estate (Mo. App.), 5 S.W.2d 457; Mills v. Smith (Mo. App.), 92 S.W.2d 939.]
[2] Second, was there a breach of the bond executed by the appellant?
This bond was not by its terms retrospective and the purchase of the mortgage bonds by the guardian was made before the bond was executed. However, the purchase of the mortgage bonds was not permissible under the statute and it was the continuing duty of the guardian to change the investment so as to comply with the statute. It was also the duty of the guardian to report on each annual settlement the description and value of the real estate security, etc. This he failed to do, and, by the express terms of the statute, such failure constituted a breach of the bond. [Mills v. Smith, supra.] Such breach occurred while the bond executed by the appellant was in force and for such breach appellant is responsible. The guardian's annual settlement filed in 1932 shows that the mortgage bonds were not then in default for the guardian charged himself with having received the interest on said bonds. There was no default in the payment of principal or interest until after the surety bond was executed by appellant. The appellant had notice, from the guardian's settlement, at the time the bond was executed that the funds were illegally invested. At that time the mortgage bonds could probably have been sold without loss and the proceeds invested in compliance with the statute. At any rate, it was the duty of the guardian to attempt to so change the investment, and it was the duty of the court to see that the guardian did so.
We have read the cases cited by appellant and do not regard them as being contrary to the conclusion we have just announced. Generally they hold that, in the absence of an express engagement to the contrary, the sureties are not responsible for the acts of the principal performed prior to the execution of the bond, but they recognize that where a second bond is given circumstances may *Page 734 
impose liability on both sets of sureties. In State to the use of Wolff v. Berning, 74 Mo. 87, an administrator converted funds during the period of his first bond and failed to make restitution in his settlements during the period of his second bond. This court held that the giving of the second bond did not relieve from liability the sureties on the first bond although both sets of sureties might be liable. To the same effect is State to the use v. Drury, 36 Mo. 281. In State ex rel. v. Hardy,200 Mo. App. 405, 206 S.W. 904, a public guardian made final settlement of his ward's estate showing a balance in a certain amount and was ordered to turn the balance over to himself as private guardian. He gave a new bond upon which he was afterward sued. He had converted the funds before the second bond was given. The court of appeals indicated that if the guardian was solvent during the period of the second bond it was as much his duty to collect the amount from himself as it would have been[100] if owed by another, and that a failure to do so should constitute a breach of the second bond, but the court did not so hold because it believed this court had held otherwise in State ex rel. Jacobs v. Elliott, 157 Mo. 609, 57 S.W. 1087. In the Elliott case just mentioned a curator had converted the funds of his ward during the period of his first bond, but falsely showed the correct amount still on hand in settlements made while the second bond was in force. We held that, while the showing of the true amount in the later annual settlements was an admission that the amount was still on hand, such admission was not conclusive. To the same effect are the holdings in Lincoln Trust Co. v. Wolff, 91 Mo. App. 133, and in State to the use of Lancaster v. Jones, 89 Mo. 470, 1 S.W. 355.
All those cases differ from the instant case. The purchase of the mortgage bonds in violation of the statute was a breach of the first bond then in force, but the question here is not whether that was a continuing breach which fastened liability on the sureties of the second bond. Nor is the situation here the same as that in some of the cases cited by appellant, where the true condition was not shown in later settlements and the question was whether the sureties on the later bond would be permitted to prove that the breach actually occurred before the second bond was executed. Here, at the time the second bond was executed, the guardian's settlements truthfully showed that the funds had been illegally invested. The same showing was made in later settlements. At all times it was the duty of the guardian to change the investments in compliance with the statute and to report such change in his settlements as required by the statute, and his failure so to do constituted a breach of the bond executed by appellant then in force.
[3] Third. Is respondent estopped to complain of the breach of the bond executed by appellant? *Page 735 
Appellant's argument on this point is based upon the fact that the guardian sought and procured the advice and consent of the attorney for the Veterans' Bureau, predecessor of the Veterans' Administration, for the purchase of the real estate mortgage bonds.
In discussing the authority which the Veterans' Administration has over the administration of a veteran's estate, appellant cites a number of cases from other states and one by our Springfield Court of Appeals, Butler v. Cantley,226 Mo. App. 1047, 47 S.W.2d 258, seeming to hold that moneys of the United States paid to a fiduciary for the benefit of a veteran or his dependents is the money of the United States until it reaches the beneficiary, intended by the trust created. However, with admirable fairness appellant also cites the cases of Spicer v. Smith, 288 U.S. 430, and Hines, admr., v. Hook, 338 Mo. 114,89 S.W.2d 52. In the Spicer case the Supreme Court of the United States sustained the Kentucky Court of Appeals in holding that war risk insurance and disability compensation paid to a guardian appointed under state law ceases to be money of the United States; the guardian takes full title to such funds and is not an agency or instrumentality of the United States. In Hines, admr., v. Hook, supra, this court, following U.S. Veterans' Bureau v. Thomas, 156 Va. 902, 159 S.E. 159, held that the Veterans' Bureau had sufficient interest in the veteran's estate to authorize it to appeal from an order overruling exceptions to the guardian's settlement. We held that such authority is derived, not from the fact that the national government created the estate or from an Act of Congress, but from Missouri statutory law, to wit, Section 606, Revised Statutes Missouri 1939, Mo. R.S.A., p. 1094.
Appellant also cites Hines v. Ayotte (Me.), 189 A. 835; Re Eigenmann (Ind.), 14 N.E.2d 585, and quotes from an unreported opinion of the Supreme Court of Livingstone County, New York. In those cases the doctrine of estoppel was applied as against the Veterans' Bureau, but in neither the Eigenmann case nor Hines v. Ayotte was there a statute confining the investments in definitely prescribed channels. The opinion in Hines v. Ayotte indicates that a different result would have been reached if a statute had prescribed the manner of investment, and states: "In many states controlling directions as to the sort of investments available to a guardian materially restrict the field of investments."
As stated in Spicer v. Smith, supra, the Acts of Congress have placed certain conditions and restrictions upon the funds granted by the government to mentally incompetent veterans. The statutes of this state have conferred upon the Veterans' Administration certain powers of assistance [101] and supervision in the management of the estates of such veterans. But neither the Acts of Congress nor the laws of Missouri have conferred upon the Veterans' Administration any power to approve or ratify the investment of the *Page 736 
veteran's funds in a manner contrary to a positive Missouri statute. The guardian has no such power, even if authorized by the probate court. [In re Farmers' Exchange Bank of Gallatin,327 Mo. 640, 37 S.W.2d 936. See, also, Steadmann's Estate,265 N.W. 596.]
The judgment should be and is hereby affirmed. All concur.