WILLIAM SONTAG, Curator of the Estate of ROSE ANNA HUWE, Non Compos Mentis, Appellant, v. CHARLES H. STIX, Co-Executor of the Estate of HARRY F. STIX, CLAIRE N. STIX, Co-Executor of the Estate of HARRY F. STIX, CHARLES H. STIX, FREDERICK A. ARNSTEIN and EDWIN R. WALDEMER, Co-Partners, d. b. a. STIX & COMPANY.—No. 39899.—199 S. W. (2d) 371.

Court en Banc, January 13, 1947.

Rehearing Denied, February 10, 1947.

973

*Julius H. Drucker, Harvey B. Cox* and *Roberts P. Elam* for appellant.

974

*McDonald, Bartlett & Muldoon* for respondents; *Daniel Bartlett, J. D. Hennigan* and *Elmer E. Hilpert* of counsel.

976

CLARK, J.—From a judgment in favor of defendants, plaintiff appealed to the St. Louis Court of Appeals. That court reversed the judgment. [191 S. W. (2d) 988.] Then, on application of defendants, we ordered the case transferred here and, in accordance with the Constitution of 1945 and our Rule 2.06, will decide it as if the appeal had come to this court direct from the trial court.

Plaintiff is curator of the estate of his mother-in-law, an insane person. Defendants are co-partners engaged in a brokerage business dealing in securities. After the suit was brought, one of the partners, Harry F. Stix, died and the case was revived against his estate. In 1929 the funds of the insane person in plaintiff's possession amounted to a little more than $4,000.00. Through his attorney plaintiff then began negotiations with an employee of defendants which culminated in the purchase by plaintiff for his ward of four notes for $1,000.00 each, being a part of an issue of notes aggregating $625,000.00, maturing at different dates and secured by a deed of trust on a hotel building, the land on which it was situate and some personal property. Defendants were apprised of the fact that the funds which plaintiff was trying to invest belonged to his insane ward. Among several securities discussed were the notes above mentioned. Defendants did not then own or have the agency for such notes, but were told that plaintiff would buy four of them if the probate judge would approve the sale. Thereafter, defendants' employee

was told by the then probate judge, who has since died, that he would approve a purchase of the notes. Then defendants went into the market and bought six of the $1,000.00 notes at 98½ plus accrued interest. Plaintiff's attorney filed a petition and procured an order approving the purchase and plaintiff accepted and paid for four of the notes at par, plus accrued interest. In 1932 there was a default in the payment of the notes and interest and the notes have become worthless. In 1933 plaintiff sued to recover the purchase money for his ward alleging that defendants had promised to repurchase and had refused to do so. Plaintiff recovered a verdict and judgment which was later set aside as being against the evidence. In 1941 plaintiff filed an amended petition in two counts: the first alleging a breach of contract to repurchase; the second alleging, in substance, that defendants are liable because they knew the notes were to be paid for out of the funds of an insane person and that the transaction was in violation of our statute, Section 418. [All references to statutes are to Missouri Revised Statutes 1939, and the corresponding sections of Mo. R. S. A.]

In his petition plaintiff alleged that the notes were not a legal investment under Section 418, and that both the plaintiff and defendants knew that fact.

The amended petition was filed more than five years after the purchase of the notes and more than one year after the publication of notice of letters in the estate of Harry F. Stix, deceased. Defendants answered by general denial and that the amended petition set up a new cause of action which is barred by the five year statute of limitation and, as to the estate of Harry F. Stix, by the one year statute of non-claim. The case was tried on the amended petition by the court without a jury. The court found the facts against plaintiff as to the first count and plaintiff concedes that the first count has dropped out of the case. As to the second count the court filed a declaration of law that the notes "were not such an investment as is authorized by Section 418," and also filed a memorandum opinion in which he found for defendants in accordance with his view of the law that defendants are not liable because they "were not the ultimate recipients of the trust fund, but acted as brokers . . ."

Section 418 provides that guardians shall "loan the money of their wards . . . , on prime real estate security, or invest it" in a certain specified manner; makes it the duty of the guardian to make, under oath, detailed reports of loans at each annual settlement; requires the court to examine the reports as soon as made and if in its opinion the security is insufficient to require additional security to be given within a specified time; if such additional security is not given the court shall require the guardian to institute suit forthwith to recover the amount due thereon and if the guardian fails to do so he

and his sureties shall be liable on their bond. We construed this statute in In re Keisker's Estate, 350 Mo. 727, 168 S. W. (2d) 96, decided in 1943, and held that the direction to a guardian or curator to *loan* the funds of his ward does not authorize him to *invest* such funds in an existing note. Defendants in the instant case do not question the soundness of our ruling in the Keisker case, but say that defendants in 1929 could not be expected to know that this court in 1943 would so construe the statute.

Defendants further contend that they are not liable because: (1) they neither knew, nor were negligent in failing to discover, that the sale was in violation of the statute and that the trial court made no finding of such knowledge or negligence; (2) the Latin maxim "Ignorantia juris neminem excusat" is not applicable; (3) the order of the probate court approving the sale, unappealed from, is conclusive against the plaintiff; (4) the cause of action is barred by. the five year statute of limitation and, as to the estate of Harry F. Stix, deceased, by the one year statute of non-claim.

All these contentions are controverted by plaintiff and all have been exhaustively briefed and argued by counsel on both sides.

Plaintiff claims and defendants concede that the purchase of the notes was in violation of the statute. There is nothing in the evidence to indicate that either the plaintiff or defendants were guilty of bad faith in the sense that they intended to deprive the insane person of her property or that they intended to, or did, reap an undue profit from the transaction. No doubt the plaintiff and the defendants believed the notes were safe and would be paid when due. As to the plaintiff, good faith is no defense for the statute defines his authority and expressly declares his liability, personally and on his bond, for exceeding his authority. The trial court said "under the facts and evidence in this case there is no doubt about the liability of the plaintiff and his surety." Of course, the liability of the plaintiff is not in issue here, in the sense that either the trial court or this court can render a judgment against the plaintiff in this case, but we think it proper to discuss the relative situation of the plaintiff and defendants to illustrate an important difference between this case and the cases cited in the briefs. The statute is silent as to the liability of third persons who deal with the guardian or curator; such liability, if it exists, depends upon other factors than the express terms of the statute.

The second count of the petition alleges that plaintiff purchased the notes from defendant and most of the cases cited and argument made in plaintiff's brief are on the theory that defendants are liable either for money had and received or as trustees ex maleficio. The evidence does not support the allegations of the petition. True, the defendants paid for the notes with their own check and were later reimbursed by plaintiff, but, in truth and in fact, defendants

acted as agents [brokers] for plaintiff and bought for him the very notes which he instructed them to buy. So, we have this situation: plaintiff, through his agents, bought for his ward notes which he knew the statute forbade him to buy, and now seeks to avoid his own clear liability and recover the loss from his agents. In saying that plaintiff is clearly liable, we do not prejudge some future case where the evidence might possibly be different, but say only that under the pleadings and evidence in *this* case plaintiff is liable and every case he cites and every argument he makes to fasten liability on his agents confirm his own liability as principal .

 Plaintiff says that the illegality of the purchase was not cured by the order of the probate court; citing, Woods v. Boots, 60 Mo. 546; Porterfield v. Bank, 327 Mo. 640, 37 S. W. (2d) 936; In re Keisker's Estate, 350 Mo. 727, 168 S. W. (2d) 96, and Humphries v. Bank, 174 Tenn. 17, 122 S. W. (2d) 446. In Woods v. Boots this court expressly held, in 1875, that an order of the probate court for the investment of a minor's fund, made in violation of the statute, was no protection to a third person who sold to the guardian. The Supreme Court of Tennessee reached a similar conclusion in Humphries v. Bank, supra. In Porterfield v. Bank, this court said that an order of the probate court would not have protected the third person who there dealt with the guardian, and in the case of In re Keisker's Estate this court said that an order of the probate court would not have protected a guardian who invested his ward's funds contrary to the terms of the statute. Strictly speaking, the expressions in the last two cases as to conclusiveness of an order of the probate court constitute dicta because no such order had been made. Even so, decisions where the question was in issue and expressions made arguendo in other cases evidence the unchanged view of the courts of this state for more than seventy years that, while the unappealed orders of a probate court made within its jurisdiction are conclusive, such orders made in violation of the express terms of a statute afford no protection to the guardian or to a third person who becomes a recipient of the property of a non compos ward.

 Plaintiff contends that "defendants, knowing that they were selling the bonds to plaintiff in his capacity as curator of an insane person's estate, and that he was using his insane ward's funds to make the purchase, were charged with knowledge of his lack of authority. Defendants, by selling these bonds to plaintiff with such knowledge, participated in an unlawful transaction and became liable to the insane ward's estate for the loss resulting therefrom. Defendants are not excused from liability because the plaintiff curator was a party to the illegal transaction, and may himself be liable to his insane ward's estate. The cause of action is in the insane ward, and it is plaintiff curator's duty to prosecute the suit thereon."

Plaintiff's illegal conduct is not binding on his insane ward, nor does the fact that plaintiff is liable, standing alone, prevent defendants from being liable also. But plaintiff, in the foregoing quotation and throughout his brief, proceeds upon the assumption that he bought the notes *from,* not *through,* the defendants and that they became the recipients of the insane person's property. The assumption does not accord with the evidence and the facts of this case differ from those in the cases cited by the plaintiff. In Porterfield v. Bank, 327 Mo. 640, 37 S. W. (2d) 936, a guardian of minors was decreed a preference against the assets of a bank in liquidation for funds which the guardian had entrusted to the bank for investment. The bank not only illegally enriched itself with the minors' funds, but, through its cashier, obtained the funds by actual fraud upon the guardian and the probate court. In Round Prairie Bank v. Downey (Mo. App.), 64 S. W. (2d) 701, the guardian of a minor was allowed a preference against the assets of a closed bank for funds of a minor which the guardian had loaned to the bank on time deposit in violation of the statute. The bank knowingly participated in the illegal transaction and its assets were increased by the minor's funds. In Woodard v. Bird, 105 Tenn. 671, 59 S. W. 143, a guardian of minors, in violation of a statute, contracted to buy an existing note paying part of the purchase price and leaving the note with the seller as a pledge to secure the balance of the purchase price. The seller who knowingly received the minors' money was held liable and the court said the guardian was also liable. In Freeman v. Bank, 167 Tenn. 399, 70 S. W. (2d) 25, a bank through an affiliate corporation sold a note to the guardian of a minor. Held: that a statute authorizing a guardian to loan his ward's money did not authorize the purchase of an existing note; that the bank became the recipient of a trust fund unlawfully diverted and became a trustee itself. Then, because of the condition of the pleadings, the case was remanded for a new trial with the suggestion "that a guardian ad litem be appointed to represent John Nolan Hargrove. His interests, if not now adverse to his guardians, may become so. Relief may be sought in his behalf against such guardians and he should be otherwise represented than by them." In Humphries v. Bank, 174 Tenn. 17, 122 S. W. (2d) 446, it was again held that authority to loan a minor's funds did not authorize the purchase of an existing note and that a bank which sold a note, knowing that the purchase price was being paid from the funds of a minor, became liable as the recipient of a trust fund. Other cases cited by plaintiff hold that an unauthorized act of a guardian is not binding on his ward. With that holding we agree.

In all the cases cited by plaintiff, in which a third person was held liable, such third person was either guilty of actual fraud in the diversion of the trust fund or was the recipient of the fund.

In their opinion in this case the St. Louis Court of Appeals placed great reliance upon the American Law Institute, "Restatement of the Law of Trusts," Section 326, and the case of National Surety Co. v. Manhattan Mortgage Co., 185 App. Div. 733, 174 N. Y. S. 9, affd. 230 N. Y. 545, 130 N. E. 887. In that case the defendant held a mortgage for $20,000.00 which the maker wished to increase to $25,-000.00. Defendant agreed to surrender its mortgage and take a new one for $25,000.00 provided some one could be found to furnish the additional $5,000.00 and accept an interest in the new mortgage subordinate to the interest of defendant. A guardian was induced by her attorney to invest $5,000.00 of the funds of her minor wards on these terms. A new note and mortgage for $25,000.00 was taken with defendant as payee. Defendant, by written instrument, assigned to the guardian, an interest subordinate to the interest of defendant, providing that the note be kept by defendant and interest and principal be collected by it, and the defendant could assign but the guardian could not. The mortgage was foreclosed and nothing was realized for the guardian. Her surety made good the loss, took an assignment from the guardian and sued the defendant mortgage company. Held: the guardian's investment was in violation of a statute; defendant had full notice and had been warned that it was dealing with the funds of a minor; that defendant was more than a mere conduit; that by its conduct it had made itself a trustee, and that defendant was liable whether it be held "to have acted as vendor of a part of the mortgage, or as agent of the guardian in the purchasing of the mortgage interest, or even as merely aiding or abetting in the use of these funds, known by it to be unlawful."

That case is somewhat like the instant case and yet we think there is an important difference. There the defendant was properly held to be a trustee because, with full knowledge of the illegal diversion, it took upon itself to retain the note and control and manage its own interest and that of the minors also.

Section 326, with the comment appearing in the "Restatement of the Law of Trusts" is as follows:

"A third person who, although not a transferee of trust property, has notice that the trustee is committing a breach of trust and participates therein is liable to the beneficiary for any loss caused by the breach of trust."

"*Comment*:

"a. *Knowledge of breach of trust.* If a third person assists the trustee in committing a breach of trust, knowing that he is committing a breach of trust, he is liable to the beneficiary for participation in the breach of trust.

"Thus, if the trustee directs an attorney or other agent to sell trust property, which the agent knows the trustee is not authorized to

982

sell, and he does sell it, he is liable for participation in the breach of trust.

"Similarly, if the trustee purchases through a stockbroker securities which it is a breach of trust for him to purchase and the broker knows that the purchase is a breach of trust, the broker is liable for participation in the breach of trust."

As an abstract statement of law we can find no fault with Section 326 or the comment published in explanation or elaboration thereof. It will be observed that Section 326 imposes liability on a third person who *has notice* and participates in the breach of trust while each of the three illustrations imposes liability on the third person only if he has actual knowledge.

Our conclusions are that a guardian who transfers the trust funds of his ward in violation of a statute and the recipient of the funds from such transfer are legally obligated to make restoration, regardless of whether or not they actually know that the guardian is without authority to make the transfer. A court order approving such transfer, contrary to the authority vested in the guardian by statute, affords no protection to the guardian or transferee. A third person, although not a transferee, who assists a guardian in an illegal diversion of trust funds, with knowledge of such illegality, is liable for consequent loss to the beneficiary and will not be absolved by an unauthorized court order. A third person, not a transferee, who innocently assists a guardian in an illegal diversion of trust funds, without knowledge of the want of the guardian's authority to make the transfer and without such notice as would cause a reasonably prudent person, after inquiry, to conclude that the guardian lacked authority to make the transfer, should not be held liable.

In 39 C. J. S., page 181, sec. 101(3), it is stated, in substance, that one who acquires assets of a ward, under an agreement of a guardian in contravention of the guardian's powers, is liable to restore such assets however blameless his motives and purposes may be. Then it is stated: "One who assists a guardian in misapplying assets may be held liable on proof that he actually knew of such misapplication or on proof of such facts as would have excited the attention of an ordinarily prudent person and put him on inquiry."

In the instant case plaintiff, in his pleading, admits that he knew he was without authority to purchase the notes. Plaintiff's attorney testified at the trial that he ▉▉▉ also knew the purchase was contrary to the statute. The attorney says he told the employee of defendants that the notes were "not prime legal investments," but did not tell the plaintiff or the probate court. The reason given by plaintiff's attorney for informing defendants of the illegality of the transaction was to induce defendants to agree to repurchase the notes, yet he did not require either the defendants or their agent to sign a written agreement to repurchase.

.In its memorandum opinion the trial court said: ". . . the evidence clearly established the fact that plaintiff, as guardian, purchased of defendants bonds not authorized under the provisions of the statute above referred to; that the defendants were well aware of that fact;" Plaintiff treats that statement as a finding by the trial court that defendants had actual knowledge that the purchase was illegal. For several reasons we do not believe the trial court so intended: he refused to render judgment against defendants; he refused a declaration offered by plaintiff which contained the statement "that said defendants knew that said bonds that they were so selling to the estate were not such as the curator was authorized to buy for his ward's estate under the laws of the State of Missouri." Defendants' employee denied that plaintiff's attorney told him the purchase was illegal. It seems strange that the attorney would so inform defendants' employee and not inform his own client and the probate judge from whom he procured the order purporting to authorize the purchase. He gave this testimony for the first time more than ten years after the purchase although he had testified in the case at least once, possibly twice, before. His testimony was closely connected with his claim that defendants agreed to repurchase, which claim the trial court denied.

We do not think the evidence shows that defendants had actual knowledge of the plaintiff's lack of authority to purchase the notes. They did know that plaintiff was a guardian and was using his ward's funds to make the purchase. They also knew that as guardian plaintiff was restricted by law in his power to make investments, but they also knew that plaintiff was represented by an attorney and through his attorney had procured an order of the probate court authorizing the purchase of the notes. In the absence of bad faith, unjust profit for themselves, or actual knowledge, were defendants bound to know that the purchase was illegal and the court order of no effect? The maxim "Ignorantia juris neminem excusat" is not of universal application. As a matter of necessity, in many circumstances a person whose acts cause or help to cause damage will not be permitted to plead ignorance of the law as an excuse. Under the facts of this case it is unnecessary to invoke the maxim as to the acts of the guardian, for he *knew* he was exceeding his legal powers. We do not think defendants, as agents of the guardian, as the conduit through which the transfer was made, were absolutely bound to know the extent of the guardian's authority. Knowing that their employer was a guardian, defendants were required to use ordinary prudence in dealing with him. The defendants, not as a complete protection under all circumstances, but as evidence of prudence and good faith under the facts of this case, had the right to place some reliance on the conduct of their employer's attorney and upon the decision of the probate judge.

■ Here the plaintiff as guardian knowingly invested his ward's funds in violation of a statute. Loss having resulted, it is the plaintiff's duty to restore the fund. If he is financially unable to do that, he should call upon his surety and, failing there, he should resign or the court remove him and appoint a successor to collect from the plaintiff and his surety.

Under the facts we think it would not accord with justice to permit the plaintiff to shift his primary obligation upon his agents, the defendants. It is unnecessary to consider the question of limitations. Accordingly, the judgment of the trial court is affirmed. *Douglas* and *Hyde, JJ.*, concur; *Ellison, J.*, concurs in result; ■ *Leedy, J.*, dissents in dissenting opinion; *Tipton, C. J.*, dissents and concurs in dissenting opinion of *Leedy, J.; Conkling, J.*, not sitting because not member of Court when cause was submitted.

■ LEEDY, J. (dissenting)—I think the opinion of the St. Louis Court of Appeals is correct both as to reasoning and result, and should be approved instead of quashed, and hence I respectfully dissent from the principal opinion. That opinion states, "Defendants were apprised of the fact that the funds which plaintiff was trying to invest belonged to his insane ward." Moreover, the opinion concedes "that the purchase of the notes was in violation of the statute." Why? Because the securities were not of the kind prescribed by Sec. 418 R. S. '39 and Mo. R. S. A. But a word further as to the facts—The salesman of Stix and Company, who handled the transaction, testified: "On this particular occasion I knew that we were getting bonds for a non compos estate, and I went to Mr. Harry Stix, one of the senior partners and told him about it. . . . Mr. Stix with that knowledge . . . went into the market and bought these bonds from the Real Estate Mortgage Trust Company *for resale* to this non compos estate." It further appears that the securities were purchased at 98½ and resold to the guardian at 100, plus accrued interest, thus netting the defendants a profit. In view of the evidence touching the manner of going into the open market and purchasing the securities "for resale", I am unable to find validity in the distinction sought to be made as to whether the plaintiff bought the securities "from" or "through" the defendants.

I am in agreement with much of the principal opinion, and in particular the following: "Our conclusions are that a guardian who transfers the trust funds of his ward in violation of a statute and the recipient of the funds from such transfer are legally obligated to make restoration, regardless of whether or not they actually know that the guardian is without authority to make the transfer. A court order approving such transfer, contrary to the authority vested in the guardian by statute, affords no protection to the guardian or transferee. A third person, although not a transferee, who assists a

guardian in an illegal diversion of trust funds, with knowledge of such illegality, is liable for consequent loss to the beneficiary and will not be absolved by an unauthorized court order. A third person, not a transferee, who innocently assists a guardian in an illegal diversion of trust funds, without knowledge of the want of the guardian's authority to make the transfer and without such notice as would cause a reasonably prudent person, after inquiry, to conclude that the guardian lacked authority to make the transfer, should not be held liable.''

Even disregarding the monetary profit accruing to defendants by virtue of the resale of these securities, and conceding, for present purposes, that defendants were not recipients of the funds under the first of the contingencies just noted, it seems to me that the case is squarely within the second contingency,[1] thus compelling an entirely different result from that reached. I think its applicability is made more apparent and particularly emphasized by the next succeeding category. The ''knowledge of such illegality,'' within the foregoing rule is, in cases of this kind (where defendants knew the funds were guardian's funds), supplied by force of the statute itself declaring the character of securities which are legal investments for guardian's funds.

Nor do I think, as the principal opinion seems to hold, the degree of culpability, as between the guardian and the defendants, is any measure of the liability of the latter *to the insane ward*. The controversy is not between Sontag, *in his individual capacity*, and the defendants. The funds of the insane ward have been dissipated by the guardian with the assistance (in a strictly legal sense) of the defendants, and the principal opinion remits the incompetent to a remedy against the guardian and his surety. Suppose they are insolvent. I think both the guardian and defendants are liable to her. The circumstance that the action is brought in the name of the offending guardian should not operate to defeat a claim against another who is also liable. In other words, had the present guardian been removed (and he should have been, because his interest is adverse to that of his ward), and this suit has been brought jointly against such removed guardian and the present defendants, I apprehend that, under the rule announced by the principal opinion, both would be answerable. *Tipton, C. J.,* concurs.

---

[1] A third person, although not a transferee, who assists a guardian in an illegal diversion of trust funds, with knowledge of such illegality, is liable for consequent loss to the beneficiary and will not be absolved by an unauthorized court order.