IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 1, 2005

## STATE OF TENNESSEE v. EDWARD JOHNSON

**Direct Appeal from the Criminal Court for Shelby County**
**No. 03-05806    Joseph B. Dailey, Judge**

_____

**No. W2004-02163-CCA-R3-CD  - Filed July 14, 2005**

_____

Following a jury trial, Defendant, Edward Johnson, was convicted of Class E felony theft, and was sentenced to serve six years imprisonment as a Range III career offender. In this appeal, Defendant contends that the trial court committed reversible error by requiring him to go to trial in this case after he had requested a continuance. He also challenges the sufficiency of the evidence to sustain the conviction. We conclude that the evidence was sufficient to sustain the conviction. However, under the particular facts of this case as set forth in the record, we conclude that the trial court committed reversible error by denying Defendant's request for a continuance. We therefore reverse the judgment and remand for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and J.C. MCLIN, JJ., joined.

C. Anne Tipton, Memphis, Tennessee (on appeal), and Mozella Ross, Memphis, Tennessee (at trial), for the appellant, Edward Johnson.

Paul G. Summers, Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; William L. Gibbons, District Attorney General; Steven Jones, Assistant District Attorney General; and Amy Weirich, Assistant District Attorney General, for the appellee, the State of Tennessee.

### OPINION

#### I. Background--Trial of Case # 03-05806 on January 14, 2004

On August 21, 2003, in case # 03-05806, the Shelby County Grand Jury returned a two-count indictment against Defendant, charging him with two counts of Class E Felony theft of money from the victim, Barbara Letson. Both counts involved the same incident. One count alleged theft by "obtaining" the property, and the other count alleged theft by "exercising control over the property."

Following conviction of both counts, the trial court merged the offenses into one judgment of conviction. Case # 03-0586 is the subject of this appeal.

According to the record, Defendant was arraigned in case # 03-05806 on August 29, 2003, and Ms. Mozella Ross was appointed to represent Defendant. The transcript of the arraignment provides the following:

| | |
|---|---|
| THE COURT: | And Ms. Ross, you have another case as well? |
| [DEFENSE COUNSEL]: | Yes, Your Honor, Mr. Edward Johnson. |
| THE COURT: | Johnson. Bring out Mr. Johnson, please. |
| (Defendant in.) | |
| [DEFENSE COUNSEL]: | Your Honor, I have previously been appointed to represent Mr. Johnson on some other matters set for trial in this division of court. We request appointment to represent him on this one also. |
| THE COURT: | Yes, I will. |
| [DEFENSE COUNSEL]: | We are waiving the reading of the indictment, entering a not guilty plea, **ask the court for a report date**. |
| [ASSISTANT DISTRICT ATTORNEY GENERAL]: | **He's got another matter set for trial, I believe**. |
| THE COURT: | January 14th. **I'll just set this for report on that trial date.** And if you resolve everything prior to that date, feel free to advance it; otherwise we'll just hear from you that day. |
| [DEFENSE COUNSEL]: | Thank you, Your Honor. |
| [ASSISTANT DISTRICT ATTORNEY GENERAL]: | Thank you, Judge. |

(End of proceedings for Friday, August 29, 2003.)

(Emphasis added.)

Also in the record on appeal is an order of the trial court making the transcript a part of the record on appeal. Included in this order is a portion wherein it is stated "that the Court has examined the Transcript of Evidence of the [t]rial in this cause and has found it to be a true and accurate record of the proceedings."

The minute entry of the arraignment of August 29, 2003 in case # 03-05806 strangely concludes with the following sentence: "Thereupon it is ordered by the Court that the above cause be set NOVEMEBER [sic] 14, 2004, for REPORT." Not only does the "report" date of November 14, 2004, conflict with what was clearly stated by the trial court in open court, it can be readily surmised that an initial "report date" over one year after arraignment would be unusual. Furthermore, review of a 2004 calendar shows that November 14, 2004, was a Sunday, obviously an unlikely date for a court appearance.

The next minute entry in the record is of the proceedings of January 14, 2004, concerning the trial of case # 03-05806, that the jury had been selected, and that the testimony would begin on the following day. The minute entry for January 15, 2004, shows that the trial was completed and the jury returned a verdict of guilty on each count of the indictment.

At the beginning of the trial proceedings on January 14, 2004, the following transpired:

| | |
|---|---|
| THE COURT: | Bring out [Defendant], please. All right. Then of [Defendant]'s two cases, the State intends to proceed? |
| [ASSISTANT DISTRICT ATTORNEY GENERAL]: | 03-05806. It's the E felony theft. |
| THE COURT: | Two counts, Theft of Property. All right. And for the record, would you like, [defense counsel], to put your client on the stand and make sure he understands what the offer is and what he's facing? |
| [DEFENSE COUNSEL]: | Your Honor, before we do that, I would like to state to the Court that he has two cases pending. One case is out of 2001 and this case is out of last year, Your Honor. And the last time we were in court on these matters, the trial for the older case was continued. |
| | And, Your Honor, I believe the record will reflect and my announcement to the Court was that I would like to hold this matter over along with the other matter for report. In talking with [the assistant district attorney] and preparing to come to court today, I was advised |

yesterday that he was going to proceed on the newer case first.

And, Your Honor, I will submit to the Court that that is not fair to the defense and we're asking the Court to allow us a week to make sure we can adequately defend [Defendant] in this matter.

[ASSISTANT DISTRICT
ATTORNEY GENERAL]:     Judge, first of all, I can't tell--I don't remember whether I specifically told [defense counsel] at the last court setting that this case would be tried first. I'm sure if it was approached at all by her, I mean, there is no question that this case was the case to be tried first.

The way these cases come about, the older case had been pending for awhile. We negotiated that case for a while. He had an eight-year offer on that case which is a C felony Theft of an Automobile over $10,000 and two Burglary of a Motor Vehicle charges, two D-- two E felonies, so a C and two Es. He is a career [offender] by far based on the notices and the amended notices that the State's filed.

He rejected that eight-year offer. He picked up this new case. The new case is a theft from the bail bond company that had him on bond on the older case that was pending. We had on the old case bond motions dealing with, you know, the facts of this new case. In fact, the defendant--and I don't know if [defense counsel] had a part in this or not--filed a motion for speedy indictment in this case in Division 3. This new case was set for trial today. It's Wednesday. The new case has two, maybe three witnesses, whereas the other case would have a minimum of probably five or six.

And if [defense counsel] was preparing solely for the old case, which did not involve a security video, she called my office either last week or the week before last, not to talk about which case was going to be tried first but to ask for a copy of the video in the new case. I copied the video for her. And I did tell her yesterday

-4-

we were trying the new case and that was not passing in the courtroom. She called me on the phone to talk about it.

And so I submit even if I didn't specifically announce on the record that this newest case would be tried first, the one with the motion for speedy indictment filed in it, that she should at the very least as we tell every defense attorney in this division to be prepared to go to trial on both of them, especially on a Wednesday trial setting where there is a two to three witness case versus five to six or seven witness case. And I just submit it at that.

[DEFENSE COUNSEL]: Your Honor, the motion for speedy indictment I don't believe was on the bail bond case. That was another matter, Your Honor, that I believe was dismissed That was a Facilitation of a Robbery, Your Honor. And I believe that case was dismissed. So the speedy indictment was not filed on this matter.

And Your Honor, it's hard to switch gears in the middle of the stream, Your Honor, in trying these cases. I met with [the assistant district attorney] today and we looked at the videotape. And I will, you know, I indicated to the Court in chambers that we do intend to file a motion regarding the videotape. But, Your Honor, I would submit to the court it's unfair to the defense to come in thinking that we're going to try one matter and then–

THE COURT: Did you in fact call [the assistant district attorney] last week asking for a copy of the videotape?

[DEFENSE COUNSEL]: I did, Your Honor.

THE COURT: So it was not just yesterday that [the assistant district attorney] mentioned that we're going to trial on this newer case and you had to drop everything and change gears midstream and get ready for this new case. You obviously were contemplating going to trial on this case even last week.

| | |
|---|---|
| [DEFENSE COUNSEL]: | Your Honor, I was contemplating reporting, having a report prepared for the Court on the case that was set for report as I was preparing for the other case. And, you know, we– |
| THE COURT: | I don't--I'm not going to comment on that. I'll simply state that in this courtroom and I imagine this is true in most courtrooms, given the length of time it takes to get a case to trial, that when you announce for trial and your client has two cases pending, and this case was announced for trial back in April--well, and then it was set to July. |
| [DEFENSE COUNSEL]: | I believe it was September, Your Honor. |
| [ASSISTANT DISTRICT ATTORNEY GENERAL]: | August 27th on the new case was the first setting. It was reset to August 28th. And then it might have been on 10/6 as well, but I think it was just set for trial on the 14th. |
| THE COURT: | Back in June it appears was when we set today for the--as the trial date on that case. And then this one was set for trial on--it appears as though August was the date, August 29th is what I'm showing. |

And in fact, I'm showing it was set for trial on the day that you were appointed to represent [Defendant] on the newer case. And that's entirely consistent with my practice in here, which is to go ahead and set them both for trial. And you're expected to be ready on both in the event a witness is missing or sick or that some other delay or conflict in the one, you can go to trial on the other so that we don't lose valuable trial time, which we now have this week, this being Wednesday afternoon, but we're not in trial, we're ready to try this case.

And I'll further add that neither of these cases is, while they're both important to the State and to the defense, neither is a complex 50-witness murder trial. And so these are both cases that you've had more than ample time to get ready and prepare on. And you were

-6-

speaking with Mr. Jones at least last week regarding the video and other discovery in the case. So we're going to trial today.

The issue of whether or not case # 03-05806 was set for trial on January 14, 2004, came up again during the hearing on a motion by Defendant regarding the admissibility of a photograph which the State sought to introduce into evidence. This hearing was held on January 15, 2004, after the jury had been selected, but prior to any testimony being heard. The following statements were made by Defendant's counsel, the prosecutor, and the trial court:

[DEFENSE COUNSEL]: Well, Your Honor, I would say it again for the record. We were prepared for trial on another case. And we had two matters set. The other matter is out of 2001 that we have been reset for trial forever. And then I just found out the day before yesterday that we were going to trial on this matter. If I knew or had known that we were going to trial on this matter, then of course I would have investigated these things. But I was not preparing for trial on this matter as I stated to the Court earlier.

[ASSISTANT DISTRICT ATTORNEY GENERAL]: Judge, I submit assuming that's all true, there is no prejudice. She knows now what it is and what's it of. There is no harm in introducing the photograph, even if it's true she didn't know beforehand. There is no prejudice.

THE COURT: First off, we have been over that already and I am satisfied, although we can go back and listen to the tape, but I'm satisfied that when you were appointed to represent [Defendant] on this other case that you were either told or the understanding was on this trial date you are to be ready on both because the jacket shows trial on both. It doesn't show report on this and trial on the other. And that's certainly my practice in here. And when the person has two or three cases set, unless one of them is a capital murder case, but if you have two or three cases set, you are ready on all of them in the event one of them can't go, you can go on the other. But we've been through all of that. I don't want to go into that again.

-7-

Thus, it can be reasonably surmised that an entry made on the "jacket" was inconsistent with what is reflected in both the transcript and in the court's minute entries of the arraignment on August 29, 2003. Although nothing in the record specifically describes what the "jacket" is, it is commonly understood that it is a folder containing the indictment, orders, and pleadings filed in the case.

In his first three grounds for relief alleged in his motion for new trial, Defendant sets forth the following:

1. The Court erred in allowing the State of Tennessee to proceed to trial on the above referenced indictment when it was clear that the State of Tennessee failed to inform Counsel for the Defense in a timely manner that it intended to go to trial on the said indictment.

2. The Court erred in allowing the State of Tennessee to proceed to trial on the above referenced indictment when pending before this Court was an older case that had been set for trial before the present case was even indicted; thus the State of Tennessee was given the advantage of prejudicial and unfair surprise.

3. The Court erred in allowing the State of Tennessee to proceed to trial on the above referenced indictment over defense objection, thus denying the defense the opportunity to adequately prepare.

With regard for these grounds for a new trial, the trial court made the following ruling at the hearing on the motion for new trial:

With regard to the state proceeding on this indictment as opposed to the other indictment, that was all discussed, in length, on the day of trial; and the transcript would bear all of this out; but clearly [defense counsel] had been on the case--the matter had been announced for trial back in August, and as is my policy because we have so many cases set for trial, in an effort to make sure that cases go to trial every week, attorneys are asked to and expected to be ready on both cases is [sic] an individual has two cases set unless one of the cases is an extraordinarily difficult case to prepare for--a capital murder case or something. But cases of this sort, it worked no prejudice to the defendant to be ready on both of these matters.

The record on appeal also contains a transcript of proceedings involving Defendant which were held on June 2, 2003, a little more than two months prior to Defendant's indictment for the charges in case # 03-05806. While the transcript of the proceedings on June 2, 2003, is styled as being in case #03-05806, the transcript reflects that the case involved charges of burglary and theft of property, set for trial for June 2, 2003, and continued to January 14, 2004, because subpoenaed witnesses had not been served. Furthermore, the facts of that case as reflected by the prosecutor in statements made to the trial court show that the case involved a situation at a Kellogg's production

facility. The theft charges in case # 03-05806 involved a situation at a bail bond company's office; furthermore, it is obvious that a June 2, 2003, trial date would not be set for a case where the indictment was not returned until August 21, 2003. On June 2, 2003, the burglary and theft charges related to the Kellogg production facility were continued for trial on January 14, 2004.

## II. Analysis--Trial of Case on January 14, 2004

On appeal, Defendant initially argues that the trial court violated his Constitutional rights to due process, protected under the Fourteenth Amendment to the United States Constitution and Article I, section 8 of the Tennessee Constitution, by requiring him to proceed to trial in case # 03-05806 on January 14, 2004. The constitutional argument was not made during court proceedings in the trial court and was not raised in the motion for new trial. Therefore, consideration that the trial court's action violated Defendant's constitutional right to due process is waived. *See* Tenn. R. App. P. 3(e); *see also State v. Walker*, 910 S.W.2d 381, 386 (Tenn. 1995); *State v. Thompson*, 36 S.W.3d 102, 108 (Tenn. Crim. App. 2000).

However, Defendant also presents in his brief the argument that it was "fundamentally unfair" for Defendant to come to trial expecting to have a trial on one case, and then be forced to go to trial on a separate indictment, which had previously been set for "report," but not for trial, for January 14, 2004.

The transcript of the arraignment held on August 29, 2003, clearly and unequivocally shows that case # 03-05806 was set for "report" (and not set for trial) on January 14, 2004. The trial court's minute entry for August 29, 2003, also reflects that case # 03-05806 was set for "report" and not for trial at the arraignment, although the month of the report date strongly appears to be in error.

Despite acknowledging that the "tape" could be listened to in order to resolve the issue, the trial court relied on notes written in the case file (the "jacket") to conclude case # 03-05806 was set for trial. While it might be difficult and time consuming to locate a tape of the August 29, 2003, arraignment, apparently the court's minute entries for August 29, 2003, though easily accessible, were not reviewed. The prosecutor candidly admitted on January 14, 2004, before the trial started that he did not "remember whether I specifically told [defense counsel] at the last court setting that this case [# 03-05806] would be tried first."

It is well settled law that a trial court speaks through its minutes. *See, e.g., In re Adoption of Gillis*, 543 S.W.2d 846 (Tenn. 1976); *Hines v. Thompson*, 148 S.W.2d 376, 379 (Tenn. Ct. App. 1940). If there is a conflict between the minute entry and what the transcript reflects, then the transcript controls. *See State v. Moore*, 814 S.W.2d 381, 383 (Tenn. Crim. App. 1991) (citing *State v. Zyla*, 628 S.W.2d 39, 42 (Tenn. Crim. App. 1981) and *Farmer v. State*, 574 S.W.2d 49, 50 (Tenn. Crim. App. 1978)). A notation on a court file ("jacket") does not control either a minute entry or the transcript of the proceedings. *See Reed v. State*, 581 S.W.2d 145, 147-49 (Tenn. Crim. App. 1978) (holding that handwritten entries "contained on or in the court's 'yellow jackets'" which the State filed

as exhibits in an attempt to prove the defendant's prior convictions could not "properly or validly establish any dates of convictions, or that final judgments were rendered in the cases in question").

According to the controlling portion of the record, the trial court granted the State's request, over Defendant's objection, to proceed to trial against Defendant in case # 03-05806 on January 14, 2004, even though the case was not set for trial on that date, but only set for "report." The State gave defense counsel one day's notice of its intent to ask the court to have a trial in case # 03-05806 on January 14, 2004. The fact that defense counsel requested a copy of the videotape in case # 03-05806 a week or so prior to January 14, 2004, is not as significant as the trial court and the prosecutor deemed it to be. Review of discoverable evidence in a criminal case not only can, but actually should, be done before the "eleventh hour." This is not an indication, absent other circumstances, that defense counsel was on notice that case # 03-05806 would go to trial on January 14, 2004. The trial court relied on a notation handwritten on the "jacket" that stated the case was set for trial on January 14, 2004. The record on appeal clearly indicates this information was erroneous. The prosecutor could only definitely state that he gave verbal notice on January 13, 2004, to defense counsel that he planned to prosecute case # 03-05806 on January 14, 2004.

Defense counsel voiced objection to proceeding to trial in case # 03-05806 at the outset of the proceedings on January 14, 2004. Defense counsel correctly knew that case # 03-05806 was set only for "report" and not for trial, on January 14, 2004. She made a very reasonable request on behalf of Defendant for a one week continuance in order to be properly prepared to represent Defendant.

The record clearly reflects that Defendant and his counsel came to court on January 14, 2004, prepared to go to trial on a case other than case # 03-05806. Defense counsel had one day's notice that the State intended to go to trial in case #03-05806, despite the fact that the record on appeal shows that case # 03-05806 had not yet been set for trial and had only been set for "report" on January 14, 2004. Defense counsel timely objected and asked for a one week continuance. The State persisted, and the trial court overruled the objection and denied the continuance.

We conclude that the trial court erred. *See Carver v. Crocker*, 311 S.W.2d 316, 317 (Tenn. Ct. App. 1957) ("while continuances are generally subject to the discretion of the trial Judge, when this discretion is abused, it is reversible error"). We further conclude that under the circumstances that the error requires a reversal of the conviction and a remand for a new trial. Tenn. R. App. P. 36(b) (error results in setting aside a judgment of conviction when to do otherwise would result in prejudice to the judicial process). Therefore, the judgment must be reversed and this case remanded for a new trial. In the event of further review, and to address all issues presented on appeal, we will review Defendant's challenge to the sufficiency of the evidence even though the conviction is reversed and remanded for a new trial. In the event a defendant prevails on a challenge to the sufficiency of the evidence, the conviction must be reversed and the case dismissed rather than remanded for a new trial. *See* Tenn. R. App. P. 13(e); *Burks v. United States*, 437 U.S.1 (1978); *Greene v. Massey*, 437 U.S. 19 (1978).

### III. Sufficiency of the Evidence

#### A. Evidence at Trial

At trial, the victim, Barbara Letson, testified that she is a secretary at a bail bond company. Her responsibilities include doing paperwork, answering phones, filling out contracts, taking pictures of customers, and operating the video surveillance system. The video surveillance system in the office consists of two cameras, which record twenty-four hours a day, alternating between cameras at three-second intervals. The cameras record the three-second intervals onto "time-lapse" videotapes, which have the capability to record four or five days worth of surveillance per tape. When the tapes are replayed on the surveillance system's VCR and monitor, they play in real time, but look "choppy" because they consist of the three-second intervals alternating between the two cameras.

On the date of the offense, the victim's wallet along with $600 was stolen while she was working at the bail bond company. She brought $600 in cash to work with her that morning because she planned on depositing that amount to cover a check she had written for her car payment. The cash consisted of three one-hundred-dollar bills and fifteen twenty-dollar bills, and was kept inside her wallet. When the victim arrived at work that morning at approximately 7:50, she placed her purse beside her desk where she always keeps it. She got some change out of her wallet to purchase a soda at approximately ten o'clock in the morning, which was the last time she saw her wallet. She left her wallet lying on top of her purse.

The victim testified that Defendant was also in the office that morning. She was familiar with him because he was a customer of the company and she had prepared his paperwork on previous occasions and prepared his file, making sure the company had his photograph and account cards. She had also seen him and personally spoken with him when he was in the office on at least three previous occasions. On the day the victim's wallet was stolen, she noticed Defendant standing around her office beginning around 10:30 or 11:00 in the morning. It was a cold day and Defendant did not have a coat on, and he said he was waiting for a ride. He was walking around in the office, going around and behind the desks in order to look out of the office's large window, going in and out the office door, and periodically standing on the sidewalk. The office's large window encompasses the entire wall which runs along the victim's desk. The victim testified that she was certain it was Defendant who was in the office waiting for a ride that day. He said hello when she called his name, and other employees in the office had spoken to him as well.

Around 3:30 or 4:00 that afternoon, one of the victim's coworkers offered to take the victim's deposit to the bank for her because he was leaving the office to deposit his paycheck. When she went to get the cash from her wallet, she discovered that her wallet was missing. She immediately rewound the surveillance tape in order to see if anyone had been around her desk. When she did so, she saw Defendant come around behind her desk. She viewed the entire video, and although there were other people around her desk that day, Defendant was the only person who was at the location of her purse. She gave the police the surveillance video along with a picture of Defendant from one

of the company's customer files.  A few weeks later, her wallet was found in the mud under some stairs behind another bail bond company a few blocks away and was returned to the victim.  Everything was still inside the victim's wallet when it was returned to her except for the cash.

During her testimony, a portion of the surveillance video was played for the jury so that the victim could explain what was on the tape.  While the tape was being played, the victim described the office, and what could be seen from the two cameras.  She pointed out herself, her desk, the window that runs along her desk, as well as the location between her desk and the window where her purse was located.  She identified Defendant on the tape, and described his actions as he went in and out of the office, walked behind her desk, walked behind the desk next to hers and looked at where her purse and wallet were located.  She described, as the jury watched the video, Defendant looking at a newspaper, placing it under his arm, and then looking at her purse.  She then testified, "He's sitting down behind my desk.  He's reaching over to where my purse is.  My wallet is laying right on top of my purse right there.  He put it under his arm and walked out the door."

On cross-examination, the victim testified that her office has a very "relaxed atmosphere" and that "all kinds of people come and go pretty much all day."  She also admitted that she did not personally witness any person take her wallet. Her knowledge of what happened was based on the video surveillance tape.

The only other witness to testify at trial was an investigator with the District Attorney's Office.  She described how, as part of her responsibilities as an investigator to set up and operate audio and video equipment from the District Attorney's Office, she used a jog shuttle VCR to slow down the surveillance video.  A jog shuttle VCR is a piece of equipment that will display surveillance videos in slow motion or slower motion that otherwise are very fast and unviewable.  The investigator only copied approximately ten minutes of the original surveillance tape in slow motion because it would have been "almost impossible" to use the equipment to copy eight hours of tape.  Both the original surveillance video and the video containing the slowed-down portion of the surveillance video were entered as evidence.

### B. Analysis

The standard of review for a sufficiency of the evidence challenge is whether viewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *See* Tenn. R. App. P.  13(e); *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. S.W.2d 560, 573 (1979); *State v. Evans*, 838 S.W.2d 185, 190-91 (Tenn. 1992).  On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).  Great weight is given to the result reached by the jury.  *State v. Johnson*, 910 S.W.2d 897, 899 (Tenn. Crim. App. 1995).  This Court will not reweigh or reevaluate the evidence, nor substitute its evidentiary inferences for those reached by the jury.  *State v. Carey*, 914 S.W.2d 93, 95 (Tenn. Crim. App. 1995).

At trial, the victim testified that her wallet, containing six-hundred dollars in cash was taken from on top of her purse, which was sitting next to her desk, while she was working at a bail bond company. She testified that when she noticed her wallet was missing, she reviewed the company's surveillance video. As she watched the video, she saw Defendant, a customer of the bail bond company, look at her purse from the desk behind hers. A few minutes later, the video depicted Defendant as he sat at her desk, reached down to her purse, took her wallet, put it under his arm, and left the building. She testified that, although the video showed other employees and customers near her desk that day, Defendant was the only person who came near the location of her purse. The evidence was sufficient for a reasonable trier of fact to find beyond a reasonable doubt that Defendant was guilty of theft of property over five-hundred dollars.

Defendant argues that the trial court erred when it allowed the victim to testify at trial as to her opinion of what was depicted on the surveillance video. However, by failing to make a contemporaneous objection to testimony given at trial, Defendant has waived appellate consideration of the issue. *See State v. Thompson*, 36 S.W.3d 102, 108 (Tenn. Crim. App. 2000).

Defendant is not entitled to relief on his challenge to the sufficiency of the evidence. Accordingly, the case, based upon trial court error heretofore discussed, is remanded for a new trial.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is reversed and the case is remanded for a new trial.

_____
THOMAS T. WOODALL, JUDGE